*Theodore William KALB, Appellant,*

v.

**George W. NORSWORTHY, Appellee.**

**No. 15285.**

Court of Civil Appeals of Texas.

Houston (1st Dist.).

May 2, 1968.

Rehearing Denied June 6, 1968.

Roy L. Arterbury, Houston, for appellant.

Urban, Coolidge, Pennington & Heard, Robert J. Newton, Houston, for appellee.

COLEMAN, Justice.

This is a suit to recover compensation for accounting services based on a written agreement in the nature of a promissory note. At the conclusion of the testimony the trial court withdrew the case from the jury and rendered judgment for the plaintiff.

The question for decision is whether testimony contradicting recitals in the instrument was admissible where the evidence tended to establish defenses to the note.

George W. Norsworthy [plaintiff in the trial court] alleged that in 1956 Theodore William Kalb [appellant herein] requested him to prepare a financial statement, inventory and appraisement of Kalb's community estate for use in a divorce suit. He alleged that he "worked on the papers necessary to file in this divorce proceeding for a number of years," and that the in-

formation accumulated was filed in the divorce proceeding. He alleged the execution and delivery of a promissory note by Kalb to Norsworthy in the principal sum of $3,500.00 due on or before three years from date. The instrument did not provide for interest, but it did provide for reasonable attorney's fees and costs. He alleged failure to pay and sued for $3,500.00 plus 6% interest from March 25, 1962, plus $1,500.00 attorney's fees.

Appellant answered that for several years prior to the institution of the divorce proceedings involved in this suit appellee had performed professional services for him in connection with his annual income tax returns. He alleged that in January, 1954 he engaged appellee's services to prepare an inventory in connection with a divorce action. In the period 1957–1959 it became necessary to file another inventory in a different divorce proceeding, and appellant again requested appellee to prepare same. This instrument was prepared and furnished to appellant, and appellee was paid $300.00.

Appellant further alleged that when it became apparent that the divorce proceeding was approaching a final determination, appellee approached him and told him that "before the actual trial of the case considerable additional accounting work would be necessary, as well as a full audit report, and that upon the trial of the case, the accountant who prepared such reports would be called as a witness to testify in detail as to all phases of the accounts, all of which * * * would engage much of his time and effort." Appellant alleged that appellee told him that it would be necessary to anticipate the cost of such time and effort and suggested that he sign an instrument that would be evidence of such costs, and would be needed as evidence upon the trial of the case. Appellant alleged that he signed the instrument presented by appellee, relying on these representations, and "having been assured" [by appellee] that, if it should develop that a property settlement was agreed and there was no need for accounting and

audit reports and court hearings requiring testimony of an auditor, the instrument of "authorization and agreement" would be of no force and effect.

Appellant alleged that a property settlement was agreed upon; that there was no court hearing requiring testimony of an auditor, and that no further auditing or reports were required, and that he received nothing of value for the execution of the instrument and that it is null and void.

He further alleged that the inventory and appraisement prepared by appellee for use in the second divorce suit was largely a copy of the one prepared for use in the first divorce suit, for which appellee charged and was paid $975.00, including the preparation of the annual income tax return. He alleged that the fee charged, and represented by the note, on which suit was brought, was grossly excessive. He offered to pay "any sum of money he may rightfully owe" appellee.

Finally appellant alleged that "the instrument made the basis of this suit is a sham and a fraud, that the considerations and purposes, if any, for which it was written never materialized, and that said instrument is null and void and of no force and effect."

■ Since this case was withdrawn from the jury, and judgment was rendered as a matter of law, we may consider only that evidence favorable to the appellant, and if a material issue of fact is presented by this evidence, the judgment must be reversed and remanded for trial before a jury.

Appellant and appellee had been friends since 1948. Appellant is a doctor of medicine and appellee is a certified public accountant. Appellee prepared appellant's income tax each year since 1949. They were personal friends and visited in each other's home. Appellant was the best man at appellee's wedding. Throughout the period of six years after divorce proceedings were initiated by appellant in 1953 until it

was finally disposed of in 1959, appellee performed accounting services for appellant relating to the divorce actions. These services, however, consisted of the compiling of information necessary for and the preparation of two financial statements and certain conferences in connection therewith. Fifty to seven-five hours' work would be required to prepare the first statement, but substantially less time for the second one. Appellee testified that appellant had full confidence in him and relied on what he, appellee, told him.

The principal question in this case arose out of an offer of testimony by appellant. Referring to the time when appellant signed the instrument made the basis of this suit, appellant's attorney directed this question to appellant: "What conversation, if any, did you have with him at that time?" Appellant answered: "Well, he said, 'Teddy, here is something to help you out.' He never explained to me what it was, except that 'In case you have a lengthy divorce trial and I am there for two or three days * * * then we can use this.' I didn't even know what was in it."

Appellee's attorney had interrupted the answer to make an objection. The objection was that the answer was "non-responsive", and that the question was improper as being an attempt to vary a contract by parol testimony. This objection was sustained by the court. Appellant's attorney objected to the ruling and requested the opportunity to make a bill of exceptions. The jury was excused and Dr. Kalb was questioned at some length in the absence of the jury for the purpose of completing the bill of exceptions.

In answer to the question asked before the jury was retired, appellant testified:

"A Well, when he handed it to me, he said, 'Now, this is something for you, Teddy. This will help you out,' and he said, 'Now, in case we have a lengthy trial and I have to testify for two or three days and verify all the figures in this financial statement, then I can make

a claim, but I don't want any part of it'; said, 'It's for you that I am doing this.'

"And I didn't even read the instrument. I said, 'Well, if that's the understanding, I will sign it.'

"Q Now, did you hand the instrument back to him or what happened to it?

"A Well, to the best of my recollection, he said, 'Do you want to keep it or shall I keep it?'

"I said, 'It doesn't make any difference. I trust you. Go ahead and keep it.'

"Q And then did he take it back?

"A Yes.

"Q This instrument is dated March 25, 1959.

"Now, when, if you remember, if ever, did he mention this instrument to you again?

"A Never did.

"THE COURT: Now, what you are offering that for is to show that their agreement was something other than what is written on that piece of paper and signed by the doctor, is that correct?

"MR. ARTERBURY: Well, that is correct, yes, but my main object is to show exactly what happened and the circumstances under which he signed it.

"Now, of course, the testimony will show, like I plead, that this was something that the plaintiff had in his mind, but never lodged in this—

"THE COURT: You are introducing this to show that the agreement between these parties was something other than what is reduced to writing and signed by the defendant, Dr. Kalb, is that correct?

"MR. ARTERBURY: That's one purpose, and the other purpose is to get in the record exactly what happened."

Other questions were directed to the witness with reference to matters transpir-

ing after the note was signed, and finally this colloquy completed the matter offered on the bill:

> "MR. ARTERBURY: That's all, your Honor.
>
> "Now, we offer this testimony and take exception to the ruling of the Court and offer this testimony as the basis of a bill of exceptions which we will take in the case.
>
> "THE COURT: All right."

The jury was then returned to the jury box, and the attorney for appellant stated that he had no further questions.

Appellant contends that the trial court erred in refusing to admit the testimony as to the conversation between the parties at the time the instrument was signed. Appellee contends that since the testimony was not properly offered in open court, appellant cannot complain of the action of the court in excluding it.

■ Clearly the question to which the objection was sustained was not subject to this defect since it was asked in open court. The statement of facts reflects the question, the answer of the witness, the objection, the purpose of the offer, the ruling of the court, and the basis of his ruling. The purpose of questioning a witness in the absence of the jury is to establish what answer the witness would have made to a question, had the trial court permitted an answer. Frequently, as a matter of convenience, other questions and answers are developed in the absence of the jury relating to the same subject of inquiry, under an agreement, express or implied, that the questions will be considered as offered, and the same objection made and sustained. In this case, however, it appears in the record that appellee's counsel objected to such an arrangement. Nevertheless, the bill of exception properly preserved the testimony concerning the conversation between appellant and appellee at the time the note was signed. Gray v. Mills, Tex.Civ.App., 206 S.W.2d 278, aff'd

Mills v. Gray, 147 Tex. 33, 210 S.W.2d 985 (1948); Gulf Paving Co. v. Lofstedt, 144 Tex. 17, 188 S.W.2d 155 (1945).

Unless appellant has sufficient pleading to establish a defense to this action, the ruling of the court on the question of the admissibility of this evidence could not amount to harmful error. The question would not be material.

■ A fiduciary relationship existed between appellant and appellee. Appellant was accustomed to being guided by the judgment or advice of appellee in legal and accounting matters relating to income taxation. By reason of appellant's long association with appellee in a business relationship, as well as the close personal friendship existing between them, appellant was justified in placing confidence in the belief that appellee would act in his best interest. Thigpen v. Locke, 363 S.W.2d 247 (Tex. 1963); Fitzgerald v. Hull, 150 Tex. 39, 237 S.W.2d 256 (1951); Squyres v. Christian, 242 S.W.2d 786 (Texarkana Civ.App. 1951, writ dism.).

In Thigpen v. Locke, supra, the Court said:

> "* * * The existence of the fiduciary relationship is to be determined from the actualities of the relationship between the persons involved.
>
> *   *   *   *   *   *
>
> "Our holding in no way detracts from the principle that a relationship of trust and confidence may be shown to arise informally from purely personal relationships. * * *"

■ Once the fiduciary relationship was established by evidence, the burden rested on appellee to show by evidence that the note which he alleges was given in payment for his services, constituted a fair and reasonable compensation for the services rendered. Archer v. Griffith, 390 S.W.2d 735 (Tex.1964); Bohn v. Bohn, 420 S.W.2d 165 (Houston Civ.App.–1st Dist.1967, writ dism.).

The testimony in this case presents a fact issue as to whether the fee appellee charged appellant, as evidenced by the note, was fair and reasonable.

The testimony excluded, as developed in the bill of exceptions, tends to support appellant's plea of fraud, in that it shows an understanding that the note was to become a binding obligation only if a trial requiring appellee's testimony ensued; and in that it shows delivery for safekeeping only. The testimony, if believed, would establish fraud in connection with the execution and delivery of the note. The trial court erred in sustaining the objection to the question. City Nat. Bank of Galveston v. American Express Co., 16 S.W.2d 278 (Tex.Com.App. 1929); Allied Bldg. Credits, Inc. v. Ellis, 258 S.W.2d 165 (Waco Civ.App., 1953); Vol. 11 American Jur.2d, Bills and Notes, §§ 657, 662, and 664; Corbin on Contracts, Vol. 6A, § 1473, pp. 607–609.

The judgment of the Trial Court is reversed and the cause is remanded.