**Joe Dudley PACE, Appellant,**

v.

**John J. McEWEN, Jr., Appellee.**

**No. 6727.**

Court of Civil Appeals of Texas,
El Paso.

Nov. 1, 1978.

Rehearing Denied Nov. 29, 1978.

---

Sam C. Bashara, San Antonio, for appellant.

Law Offices of Pat Maloney, Inc., Pat Maloney, Jack Pasqual, George LeGrand, San Antonio, for appellee.

## OPINION

WARD, Justice.

This suit is by John J. McEwen, Jr., as Independent Executor of the Estate of Bessie McEwen Spence, deceased, to recover money from Joe Dudley Pace who had received large gifts from the deceased shortly before her death. The theories of recovery advanced were that the gifts were made to the Defendant while he occupied a position of trust and confidence to the deceased, who lacked mental competence and who acted as a result of his undue influence and fraudulent conduct. Trial was to a jury which in the main answered all but the fraud special issues favorable to the position of the Plaintiff. Based on the verdict, judgment was entered in favor of the Plaintiff in the amount of $242,271.75. We affirm the judgment of the trial Court.

Joe Dudley Pace, a stockbroker, met Mrs. Spence in 1959 or 1960 when she used his services to sell a few shares of her stock. Thereafter, on three or four other occasions, she had him arrange small sales of her stock. In 1964, he advised her on an investment program that would yield a monthly income. Acting on his recommendation, she purchased a Dreyfus Fund Program for approximately $50,000.00. At that time, she also had some $40,000.00 in Franklin Life Insurance stock and a $16,000.00 home. She was then ninety years old, a widow with no children, and had lived for many years in Houston. Her nearest relatives were a sister, a nephew and a niece, all of San Antonio. On November 27, 1964, she executed a will where those relatives were named as equal beneficiaries, and the nephew, John J. McEwen, Jr., was designated as the independent executor. At that time, she also executed a power of attorney to the nephew. Then began her actions which resulted in this lawsuit. On December 28,

1964, she gave to the Defendant Franklin Life Insurance Company stock of the value of $32,969.00, and on January 5, 1965, gave to him the balance of her Franklin Life Insurance Company stock of the value of $6,889.00. On July 1, 1966, when she was ninety-two years of age, she executed a universal power of attorney in favor of the Defendant, and, on August 26, 1966, purportedly made a gift to him of her Dreyfus Fund of the value of $52,413.00, that being the remainder of her stockholdings. There was no consideration or reason given for any of these transfers other than the Defendant's statement as to his friendship with the elderly lady, and the work which he had done for her for which he had already received a commission. In July, Mrs. Spence was hospitalized for a spinal injury, and she died on November 1, 1966. Later in November, her will was probated and McEwen qualified as independent executor of her estate. The present suit was not filed until September, 1973.

The Plaintiff's trial pleadings consisted of allegations of the existence of a fiduciary relationship between the Defendant and his client Mrs. Spence, its breach, and the fraudulent appropriation of the securities; further, that she lacked necessary mental capacity and was acting under undue influence in making the various transfers. The Defendant in turn pled the two and four-year Statutes of Limitations, laches, waiver, and that the transfers were executed gifts.

By its answers to the special issues submitted, the jury determined: (1) that as to the two transfers of stock dated December 28, 1964, and January 5, 1965, Mrs. Spence did intend to make a gift, but as to the transfer dated August 26, 1966, she did not intend to make a gift; (2) that as to those two transfers on which she did intend to make a gift, she was unduly influenced by the Defendant Pace to make each respective gift; and (3) that as to those two occasions upon which she did intend to make a gift, she did not possess the mental capacity sufficient to understand the effect and consequences of her acts. Issues were then submitted regarding fraudulent representations and were answered in favor of the Defendant. In Special Issue No. 10, the jury answered "No" to the inquiry that more than two years prior to September 19, 1973, the Plaintiff knew, or by the exercise of reasonable diligence might have discovered, or was in possession of such facts as would cause a reasonable prudent person to make inquiry which would lead to a discovery of the transfer by Mrs. Spence of the three stock transfers to the Defendant.

Because the matter has been presented in different form upon a previous appeal, we will first dispose of the Defendant's seventh point which asserts that, as a matter of law, the suit was barred by the Statute of Limitations. On this issue, a summary judgment was previously entered in favor of the Defendant, and that judgment was reversed on the ground that the summary judgment proof did not preclude the absence of an issue of material fact concerning the defense of limitations. *McEwen v. Pace*, 538 S.W.2d 426 (Tex.Civ. App.—San Antonio 1976, no writ). Contrary to the Plaintiff's first argument, that holding did not establish the point as a matter of law. *Glenn v. Prestegord*, 456 S.W.2d 901 (Tex.1970). Contrary to the Defendant's first argument, lack of pleadings of fraudulent concealment or other excuse to the running of the Statute of Limitations does not establish this point in the Defendant's favor. Lack of pleadings is foreign to our consideration of the point and, further, evidence as to the excuse was introduced and issue No. 10 was submitted without any objection on the Defendant's part. Tex.R. Civ.P. 67.

As later discussed, a fiduciary relationship existed between the broker-Defendant and Mrs. Spence during her lifetime, and undue influence was exercised by that broker in regard to the stock transfers made to the Defendant. That being the case, we have a person in a fiduciary relationship exercising his undue influence to secure a personal benefit. The exercise of undue influence is recognized as being a mere species of legal fraud. *Curry v. Curry*, 153 Tex. 421, 270 S.W.2d 208 (1954). Under

those circumstances, actual notice of the fraud must be given before the Statute of Limitations is set in motion. *Bush v. Stone*, 500 S.W.2d 885 at 890 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n. r. e.). That fiduciary relationship ceased, however, when Mrs. Spence died, and the trial Court submitted the issue on the excuse to the Statute of Limitations under the discovery rule normally used in "arms-length transactions." That rule states that fraud prevents the running of the Statute of Limitations until it is discovered, or when by the exercise of reasonable diligence it might have been discovered. Knowledge of facts that would have excited inquiry in the mind of a reasonable prudent person which, if pursued by him with reasonable diligence, would lead to the discovery of fraud, is equivalent to knowledge of the fraud as a matter of law. However, the mere fact that one had the opportunity or power to investigate the fraud is not sufficient in law to charge him with knowledge. The defrauded party must be cognizant or aware of facts as would have caused the ordinarily intelligent and prudent person to investigate. *Ruebeck v. Hunt*, 142 Tex. 167, 176 S.W.2d 738 (1943); *Bush v. Stone*, supra at 889.

The evidence in regard to the Statute of Limitations question is as follows. According to the Plaintiff, he ordinarily visited his Aunt Bessie Spence twice a year by making the trip from San Antonio to Houston. At the time the will was made, he stated that she was failing mentally and was rather senile thereafter. He inquired of her financial state and was told by her that she had some stock and that she received some social security and rents from her home. He had no knowledge of the amount of stock. He also knew that the Defendant had befriended her, that he was her financial advisor, and that he took care of her personal affairs. After her death, he found no stock in the house or in her safety deposit box, and he questioned the Defendant as to the location of any stock. The Defendant told him there was none and would provide him later with his knowledge of her property. The Defendant later delivered to the Plaintiff three bank statements, some cancelled checks, paid bills, and some insurance policies. The Plaintiff admitted that it seemed strange to him that he could find no stock, and that when he spoke to the Defendant, the Defendant was rude to him and he became suspicious when he did not receive any more information. On the other hand, he stated that he did not know any more about his Aunt's affairs other than as described. He probated the will and on the inventory reported what he knew of her estate, that being her home, a small amount of cash, two checking accounts, household furniture, and a mink stole. He stated that he never learned that the Defendant had gotten stock from his Aunt until 1973. At that time, he received some phone calls from a Mr. Diaz from Houston advising him that his Aunt had had considerable stocks, and that Mr. Pace had caused her to transfer ownership of the stocks to him. He then filed suit, and it was only after Court-ordered discovery that the Defendant disclosed the stock transactions.

Even if we apply the arms-length transaction rule to the two parties before us, the fiduciary relationship that existed between Mrs. Spence and the Defendant should be one of the factors to be considered in determining whether the fraud might have been discovered by the exercise of reasonable diligence. To that extent at least, the Defendant would not profit by Mrs. Spence's death. *Courseview, Inc. v. Phillips Petroleum Company*, 158 Tex. 397, 312 S.W.2d 197 at 205 (1957).

After considering only the evidence supporting the jury finding on the discovery issue, the seventh point is overruled. The Defendant, by his eighth point, complains that the finding on the discovery issue is contrary to the great weight and overwhelming preponderance of the evidence and, after considering all of the evidence, this factual insufficiency point is likewise overruled.

The Defendant's first two points are legal and factual insufficiency points to the effect that the evidence failed

to support the jury finding that on August 26, 1966, Mrs. Spence did not intend to make a gift to the Defendant. It was on that date that the purported gift was made of the last of the Dreyfus Fund stock of the value of $52,413.00. On that day, Mrs. Spence executed an instrument of a gift to Mr. Pace of all shares of Dreyfus Fund, Inc. standing in her name. That transfer was executed before a notary public and two witnesses. At that time, a gift tax return was signed and the Defendant later paid the gift tax under the power of attorney earlier executed by Mrs. Spence.

The Defendant, the two witnesses to the instrument, and a maid testified to the August 26th event. The Defendant stated that after he became acquainted with Mrs. Spence, he further befriended her by often visiting her, by running her errands, and by taking her to the opera; that his own mother became a close friend of hers and often visited with her; that though Mrs. Spence was very elderly, she was never senile but always alert and capable of doing her own shopping, cooking, and cleaning up until the time of her last illness; that the stock gifts were her own idea, and that she personally delivered the various certificates to him. The Defendant testified that after the execution of her will, she expressed a fear that her nephew would force her to move out of her home, would move her to a nursing home in San Antonio, and would get all of her property. It was this fear and her often expressed devotion to the Defendant that prompted the three gifts. He stated that he had the instrument creating the gift of August 1966 prepared and caused two of his friends to act as the witnesses to Mrs. Spence's signature.

The two friends and a maid were called and testified that Mrs. Spence was alert on the occasion that the instrument was read to her, that she understood it, and that she willingly signed the instrument. The witnesses did not know the value of the gifts nor of the existence of the previous gifts.

The maid testified that she was told that the instrument was made so that Mr. Pace could take care of all of her things for her, and that Mrs. Spence said that she wanted him to take care of all of the monies.

The Court instructed that a "gift" meant:
" * * * a voluntary transfer of property from one person to another person without any consideration or compensation therefor, coupled with the intention of the donor to divest herself of the title, dominion and control of the property at the very time of the gift and the delivery of the possession of the property to the donee so that the donor can exercise no further act of dominion or control over it."

No objection was made to the instruction, and the Defendant insists that each element required to establish the gift at the time in question was established by competent evidence, nothing being offered to contradict the occurrence as described above. What the Defendant overlooks, however, is the fiduciary relation then existing between the parties whereby the Defendant consented as a matter of law to have his conduct measured by the standards of the finer loyalties exacted by Courts of equity. *Johnson v. Peckham*, 132 Tex. 148, 120 S.W.2d 786 (1938). The rule regarding the gift to a fiduciary is stated in 38 Am.Jur.2d Gifts, Sec. 36 (1968), as follows:

"A gift between persons occupying confidential relations toward each other is, if its validity is attacked, always jealously scrutinized by a court of equity, and unless found to have been freely, voluntarily, and with a full understanding of the facts, will be invalidated. * * *

"Improvidence of the donor may be considered, with other evidence, as tending to establish undue influence or abuse of a confidential or fiduciary relationship so as to make a gift invalid. It has been held that if, at the time of the gift, the donor's mind has been enfeebled by age and disease, even though not to the extent of producing mental unsoundness, and the donor acted without independent advice, such gift being of a large portion or all of the donor's estate and operating substantially to deprive those having a natural claim to the donor's bounty of all

benefit from the donor's estate, these circumstances, if proved and unexplained, will authorize a finding that the gift is void, through undue influence, without proof of specific acts and conduct of the donee. Improvidence may also be a factor in the determination of the mental capacity of the donor to make a gift."

In some jurisdictions where a confidential relation exists between donor and donee, the donee is required to prove that the donor had the benefit of competent and independent advice of a disinterested third party. In other jurisdictions, such competent independent advice is considered only as a factor to be considered along with the other facts in the case. See *Bohn v. Bohn*, 455 S.W.2d 401 (Tex.Civ.App.—Houston [1st Dist.] 1970, writ dism'd); *McSpadden v. Mahoney*, 431 P.2d 432 (Okl.1967); 38 Am. Jur.2d Gifts, Sec. 37 (1968); 38 C.J.S. Gifts § 34c (1943).

Here the aged and frail woman acting without independent advice gave her fiduciary the balance of her stock, which almost left her in an impoverished condition. As this transaction was explained to one of the witnesses, it was done to enable the Defendant "to take care of all of her things for her." This is something entirely different from the necessary intention required to make an outright gift. After considering all of the evidence and inferences arising therefrom which support the jury's findings, the first point is overruled. After considering all of the evidence, the second point is overruled.

Special Issue No. 2 inquired of the jury if Mrs. Spence, on the occasion of each gift, was unduly influenced by Mr. Pace in making the gifts. By its answer to Special Issue No. 2, the jury determined that Mrs. Spence was unduly influenced in making the gifts of December 28, 1964, and January 5, 1965. Because of the conditional form of the submission, the inquiry was not answered as to the final transaction dated August 26, 1966. The trial Court defined "undue influence" in terms of a normal transaction and not in terms of gifts to one in a confidential relationship, and placed the burden

of proof upon the Plaintiff. No objection was made to the charge and, even with this heavier and unnecessary burden, the jury did answer the undue influence issue as to the first two dates in the Plaintiff's favor. The Defendant's next two points are legal and factual insufficiency points to the effect that the evidence failed to support the jury's findings of undue influence on December 28, 1964, and January 5, 1965. Regardless of how the jury was charged, when the fiduciary relationship was established, the burden then rested on the Defendant to show by evidence the fairness of the transactions. He must have produced evidence affirmatively showing that he acted in good faith and that the gift was voluntarily and understandably made. Without repeating, the factors previously discussed are of importance in the determination of whether any fraud, actual or constructive, was perpetrated on Mrs. Spence. *Bohn v. Bohn*, supra; *Archer v. Griffith*, 390 S.W.2d 735 (Tex.1964); *Kalb v. Norsworthy*, 428 S.W.2d 701 (Tex.Civ.App.—Houston [1st Dist.] 1968, no writ). Without further discussion, the third and fourth points are overruled.

■ The jury next determined by its answers to Special Issue No. 3 that Mrs. Spence lacked the mental capacity to make the gifts of December 28, 1964, and January 5, 1965. Her mental capacity on August 26, 1966, was not inquired about as again the Court submitted the question in such a conditional form that it was not answered as to that date. The Defendant attacks these findings again by two legal and factual insufficiency points. The question of the subjective mental capacity of Mrs. Spence and the probative value of the evidence necessary to be introduced to show her lack of mental capacity is entirely different from that previously discussed where the fiduciary had a duty to show the fairness and validity of the gifts and that they were free from the taint of fraud or undue influence. In looking at the evidence on the subjective mental capacity of Mrs. Spence, the rules are not relaxed just because of the fiduciary relationship. Without detailing

the evidence on mental capacity, we hold that the Plaintiff and the other lay witnesses expressed opinions on mental conditions which were without a factual basis, and therefore were without probative value and amount to no evidence. Proper inquiry was the condition of Mrs. Spence's mind on the two days in question and not some thirty days before or six months after. The "no evidence" point No. 5 is sustained, and if we were to reach it, we would sustain the factual insufficiency point No. 6. *Bradshaw v. Naumann*, 528 S.W.2d 869 (Tex.Civ. App.—Austin 1975, no writ); *Brewer v. Foreman*, 362 S.W.2d 350 at 354 (Tex.Civ. App.—Houston 1962, no writ). These rulings do not help the Defendant as we have overruled his previous points which attacked the alternative findings establishing the invalidity of the three gifts.

By its answer to Special Issue No. 11, the jury found that the Appellant acted with malice toward Mrs. Spence on each of the gift days, and these findings are attacked by the Defendant's next two evidentiary points. The Defendant argues in the main that since the fraud issues were found against the Plaintiff, there is no foundation for the imposition of the malice issue. Again, what is overlooked is that undue influence is a form of legal fraud. It may exist without resort to false representations, but by a more subtle form of deceit or cunning, particularly where there has been an unconscionable advantage taken of a confidential relationship. See 25 Tex. Jur.2d Fraud and Deceit, Secs. 4 and 8 (1961). We hold that this was a proper case for the submission of the malice issue to the jury, that the evidence was sufficient to justify the jury's affirmative finding, both by the legal and factual insufficiency test, and the two points are overruled.

Under the terms of the final issue, the jury awarded the sum of $150,000.00 as exemplary damages. The Defendant first attacks the award on the ground that under Article 16, Sec. 26, Tex.Const., the Plaintiff as executor of the estate and as a nephew is prohibited from bringing a suit for exemplary damages, arguing that under the constitutional provision, only the surviving husband, wife and children may recover the exemplary damages. There is no doubt that this is the rule where the action is brought under the Wrongful Death Act, as there the Constitution does describe the beneficiary limitations. *Scoggins v. Southwestern Electric Service Company*, 434 S.W.2d 376 (Tex.Civ.App.—Tyler 1968, writ ref'd n. r. e.). The Constitution and the cases construing it are speaking only where the tortious act causes a death. We do not have a tortious act against the person, and the constitutional limitation has no application to the present facts.

The Defendant's second attack is on the more stable ground that a recovery for exemplary damages for this type of action did not survive the death of Mrs. Spence. The subject generally has a tangled history and interpretation. See Prosser Torts 4th Ed. 898. In this State, suits for physical damages to property have been permitted to survive. *Aldridge v. Stout*, 36 S.W.2d 1110 (Tex.Civ.App.—Fort Worth 1931, no writ). It has been pointed out that the Texas decisions holding that an action for damages to real or personal property survive the death of the owner are based upon an erroneous historical assumption. But the rule that those damages do survive is established. *Landers v. B. F. Goodrich Company*, 369 S.W.2d 33 (Tex.1963); Morton, "Survival of Actions for Property Damage in Texas," 37 Tex.L.Rev. 905 (1959). Somewhat similar, the damage action for the wrongful acquisition of specific property by reason of fraud and deceit or the cause of action for conversion of property both survive the death of the wrongdoer. 1 Tex.Jur.2d Abatement and Revival, Sec. 110 (1959). That authority also points out that the survival of exemplary damages has been denied in certain early cases. 1 Tex. Jur.2d Abatement and Revival, Sec. 109. However, in *Houston-American Life Insurance Co. v. Tate*, 358 S.W.2d 645 (Tex.Civ. App.—Waco 1962, no writ), the Waco Court held that exemplary damages which were based on unreasonable collection efforts did survive under Article 5525, Tex.Rev.Civ.

Stat.Ann., on the reasoning that the terms of the survival statute are very broad, comprehensive and inclusive, and that a holding that exemplary damages did not survive would be equivalent to grafting an unauthorized exception upon the statute. Without further discussion, we concur in the results of this last cited case and hold that exemplary damages do survive the death of one who has been wrongfully imposed upon by her trusted fiduciary and thus tricked into disposing of a large portion of her assets. Since the basis of exemplary damages is to furnish a needed deterrent to wrongdoing, the deterrent should survive the death of the injured party in areas where the Constitution and statutes have not provided to the contrary. The Defendant's eleventh point is overruled.

 The exemplary damages award is next attacked by legal and factual insufficiency points, as well as one attacking the amount as being so unreasonable as to require a remittitur. The argument under the first of these points is that there was no evidence of the type of conduct which would justify the award of exemplary damages. A broad definition of malice was given to which no objection was levied. It has been said that exemplary damages are available only if the unlawful act warranting the actual damages was of a wanton and malicious nature. It may be actual or implied. Actual malice is characterized by ill will or an intent to injure; implied or legal malice exists when wrongful conduct is intentional and without just cause or excuse, and, as used in the definition, it is not necessary in order to find malice that hatred, dislike, spite or resentment exists, but malice may be inferred from the doing of an unlawful act without reasonable grounds for believing the same to be unlawful. See *Courtesy Pontiac, Inc. v. Ragsdale*, 532 S.W.2d 118 (Tex.Civ.App.—Tyler 1975, writ ref'd n. r. e.). Whether it be deemed either actual or implied malice, we conclude that it was present in this case, and considering only the evidence and inferences which support the finding of conduct warranting exemplary damages, we overrule the legal insufficiency point. After considering all of the evidence, we overrule the factual insufficiency point.

 As to the point urging that a remittitur of a portion of the exemplary damage award of $150,000.00 be ordered, we first note that in determining whether exemplary damages are excessive, a Court of Civil Appeals is to consider such matters as the degree of outrage produced by the evil, the frequency of the evil, and the size of an award needed to deter similar wrongs in the future. In addition, the amount of exemplary damages should be reasonably proportionate to the actual damages found, which in this case bears a ratio of roughly one and one-half to one. *Southwestern Investment Company v. Neeley*, 452 S.W.2d 705 (Tex.1970). Having considered the circumstances, the fiduciary relation, the age and helplessness of Mrs. Spence, and the ratio, the point is overruled. *Flanigan v. Carswell*, 159 Tex. 598, 324 S.W.2d 835 (1959).

 The Defendant's final two points are to the effect that the trial Court abused its discretion in permitting the Plaintiff to file two trial amendments just prior to the case being submitted to the jury. Having considered the original pleadings filed by the Plaintiff to which no exception was made, the manner in which the facts were determined, and all of the evidence in the case, we find that the trial Court did not abuse its discretion. Tex.R.Civ.P. 66 and 67.

The judgment of the trial Court is affirmed.