In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00101-CV
______________________________


R. CRIST VIAL, ANGELA GLOVER, BETTY HOFFMAN,
AND CARMAN TUCKER, INDIVIDUALLY AND ON BEHALF
OF ALL OTHERS SIMILARLY SITUATED, Appellants
 
V.
 
GAS SOLUTIONS, LTD., MISSION RESOURCES
CORPORATION, D/B/A BELLWEATHER EXPLORATION
COMPANY, AND TEXACO EXPLORATION
AND PRODUCTION, INC., Appellees


                                              

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 2002-2102-A


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            R. Crist Vial, Angela Glover, Betty Hoffman, and Carman Tucker appeal the trial court's
granting of the summary judgment motions and pleas to the jurisdiction of Gas Solutions, Ltd.,
Mission Resources Corporation, d/b/a Bellweather Exploration Company, and Texaco Exploration
and Production, Inc. The Appellants claim their predecessor in interest was fraudulently induced to
execute an agreement concerning a six-acre tract of land, which we will refer to as the Campbell
tract. The entire tract lies beneath an easement acquired in 1872 by the Texas & Pacific Railway
Company.


 
            In 1887, T. M. Campbell


 purchased the land in and around the easement. The Appellants
claim ownership in the right-of-way through the conveyance of the Nettleton tract.


 In a companion
case also decided this day, we determined that T. M. Campbell conveyed the right-of-way under the
strips and gores doctrine to the Appellants' predecessor in interest.


 
            Since 1931, Gregg Oil and its successors have been extracting oil from the Campbell tract. 
They have been operating under a lease granted in 1931 by Fannie Campbell.


 The Appellants argue
that Fannie Campbell did not own the Campbell tract in 1931 and that Campbell's lease to Gregg Oil
did not validly convey a mineral lease. The Appellants argue their predecessors actually owned the
Campbell tract and were fraudulently induced by Tidal Oil


 to execute a 1931 agreement, which
designated that Gregg Oil had an oil and gas lease on the Campbell tract. The 1931 agreement was
in essence a well-spacing agreement in which Tidal Oil, the Appellants, and the owners of the
mineral estates of the neighboring tracts agreed not to drill any additional wells. However, the
agreement contained the following recital which forms the basis of this lawsuit: "WHEREAS, the
above tract of land adjoins on the south the right of way of the Texas & Pacific Railroad which right
of way is under lease for oil and gas purposes to Gregg Oil Company." The Appellants allege that
this recital misled their predecessors to believe that the lease to Gregg Oil was valid. According to
the Appellants, the recital was fraudulently induced and they relied on the recital to their detriment. 
The Appellants further allege that Texaco, Mission Resources, Gas Solutions, and their predecessors
fraudulently concealed the fraudulent inducement.
            The Appellants raise seven issues on appeal: 1) the trial court erred in denying their motions
for partial summary judgment based on fraudulent inducement, 2) the trial court erred in finding they
lack standing, 3) adverse possession is not relevant to the facts of this case, 4) any statute of
limitations was tolled by fraudulent concealment, 5) Texaco is by merger Tidal Oil,


 6) the recital
is not a deemed statement of the Appellants, and 7) the continuing acts of misrepresentation did not
provide constructive notice of the fraud. The Appellants claim the trial court erred in overruling
their motion for a partial summary judgment based on fraudulent inducement and fraudulent
concealment. In the alternative, the Appellants claim there is a fact issue concerning fraudulent
concealment. Texaco and Mission Resources argue that the Appellants' claim is barred by the four-year statute of limitations. We conclude the trial court erred in finding that the Appellants lacked
standing. We further conclude that, if Tidal Oil committed fraudulent inducement or fraudulent
nondisclosure, there is no evidence of fraudulent concealment tolling the statute of limitations. 
Thus, the statute of limitations bars suit. We affirm the judgment of the trial court in part and
reverse in part.
Standing
            Gas Solutions, Texaco, and Mission Resources all filed pleas to the jurisdiction challenging
the Appellants' standing to bring suit. Gas Solutions, Texaco, and Mission Resources argue the
Appellants lack standing on two theories. Since the Appellants did not own the property when the
cause of action accrued, the Appellants lack standing to sue for damages to real property. Second,
because fraud claims are personal to the defrauded party, the Appellants lack standing to sue for
fraud. We disagree. Because fraud survives the death of the injured party, the Appellants have
standing as heirs of the injured party.


 
            On May 2, 1931, Carol L. Simpson received and recorded in Gregg County, Texas, a mineral
deed conveyance from Edna Nettleton consisting of twenty-five percent of the mineral estate in a
165-acre tract.


 Because T. M. Campbell did not retain any interest in the Campbell tract, Simpson's
mineral interest included a twenty-five percent mineral interest in the Campbell tract to the center
of the right-of-way. See Glover, No. 06-04-00100-CV; see also Cox, 143 S.W.2d at 365. The
Appellants inherited from Simpson their interests in the mineral estate of the Nettleton tract on
December 13, 1985. 
            A plea to the jurisdiction challenges a trial court's subject-matter jurisdiction over the
controversy. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). "A plea to the
jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to
whether the claims asserted have merit." Id. Whether the trial court had subject-matter jurisdiction
is a question of law subject to de novo review. Tex. Natural Res. Conservation Comm'n v. IT-Davy,
74 S.W.3d 849, 855 (Tex. 2002); Cook v. Exxon Corp., 145 S.W.3d 776, 780 (Tex.
App.—Texarkana 2004, no pet.). 
            Standing is a constitutional prerequisite to maintaining a suit under Texas law. Tex. Ass'n
of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993). Standing, as a necessary
component of a court's subject-matter jurisdiction, cannot be waived and can be raised for the first
time on appeal. Id. at 443. Standing requires the claimant to demonstrate a particularized injury
distinct from that suffered by the general public. Blue, 34 S.W.3d at 555–56; see Rodgers v. RAB
Invest., Ltd., 816 S.W.2d 543, 546 (Tex. App.—Dallas 1991, no writ). The claimant must have an
actual grievance, not one that is merely hypothetical or generalized. Brown v. Todd, 53 S.W.3d 297,
302 (Tex. 2001). We review the issue of standing de novo. Tex. Dep't of Transp. v. City of Sunset
Valley, 146 S.W.3d 637, 646 (Tex. 2004).
            Only the person whose primary legal right has been breached has standing to seek redress for
an injury. Nobles v. Marcus, 533 S.W.2d 923, 927 (Tex. 1976); Cook, 145 S.W.3d at 780. In other
words, a person has standing to sue only when he or she is personally aggrieved by an alleged wrong. 
Nootsie, Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 661 (Tex. 1996). "Without
a breach of a legal right belonging to a plaintiff, that plaintiff has no standing to litigate." Denman
v. Citgo Pipeline Co., 123 S.W.3d 728, 732 (Tex. App.—Texarkana 2003, no pet.); Brunson v.
Woolsey, 63 S.W.3d 583, 587 (Tex. App.—Fort Worth 2001, no pet.). 
            Texaco, Mission Resources, and Gas Solutions cite this Court's opinions in Cook, 145
S.W.3d at 780, and Denman, 123 S.W.3d 728, for the proposition that the Appellants lack standing. 
In Denman and Cook, this Court held that the plaintiffs lacked standing when any injury to the
property occurred before the plaintiffs purchased the property and their deeds contained no
assignment of any cause of action. Denman, 123 S.W.3d at 734–35. The cause of action for an
injury to property belongs to the person owning the property at the time of the injury. Cook, 145
S.W.3d at 781; Lay v. Aetna Ins. Co., 599 S.W.2d 684, 686 (Tex. Civ. App.—Austin 1980, writ ref'd
n.r.e.). Without express provision, the cause of action does not pass to a subsequent purchaser of
the property. Cook, 145 S.W.3d at 781. Without such an express provision, a subsequent purchaser
cannot recover for an injury committed before his or her purchase. Id. Our decision in Denman is
distinguishable from the current case. The Appellants in this case are not subsequent purchasers of
the property but, rather, the heirs of the deceased party. Further, this case concerns a suit for fraud
rather than for damages to real property. 
            In the alternative, Texaco and Mission Resources argue that the Appellants lack standing
because fraud is personal to the defrauded party and the Appellants were not parties to the 1931
agreement.


 A fraud claim is personal to the defrauded party. Nobles, 533 S.W.2d at 927. 
However, if the cause of action survived the death of the injured party, the heirs of the defrauded
party may have standing to recover for the fraud.
            To determine whether a cause of action survives, we must first determine whether the
survivability of the cause is controlled by common-law principles or whether a statute provides for
survival. Neither party argues that a statute controls the survivability, and our own research has
yielded none. When a cause of action is not covered by a survival statute, the common law will
control. First Nat'l Bank of Kerrville v. Hackworth, 673 S.W.2d 218, 220 (Tex. App.—San Antonio
1984, no writ). 
            Under the common law, whether a cause of action survives depends on the nature or
substance of the cause, rather than the form in which the cause is asserted. Dowlin v. Boyd, 291
S.W. 1095, 1098 (Tex. Comm'n App. 1927, judgm't adopted); State v. Stone, 271 S.W.2d 741, 749
(Tex. Civ. App.—Beaumont 1954, no writ). A suit for injury to personal or real property will
survive the death of the decedent and pass to the heirs of the decedent. See Dowlin, 291 S.W. at
1098; Hackworth, 673 S.W.2d at 220; Pace v. McEwen, 574 S.W.2d 792, 800 (Tex. Civ. App.—El
Paso 1978, writ ref'd n.r.e.). The Texas Supreme Court held:
The true line of demarcation at common law separating those causes of action which
survive, from those which do not, is that in the first the wrong complained of affects
primarily and principally property and property rights, and the injuries to the person
are merely incidental, while in the latter, the injury complained of is to the person,
and the property and rights of property affected are merely incidental. In the former
case the cause of action survives, while in the latter it abates. 
Dowlin, 291 S.W. at 1098 (suggesting that fraud survives the death of the injured party); see
Hackworth, 673 S.W.2d at 220; Pace, 574 S.W.2d at 800. "Suits for wrongful acquisition of
property by fraud or deceit likewise survive the death of either party." Thomes v. Porter, 761 S.W.2d
592, 594 (Tex. App.—Fort Worth 1988, no pet.) (citing Pace, 574 S.W.2d at 800).
            Mission Resources and Texaco both argue that the Appellants' claims are barred because the
property has since been adversely possessed. Unlike the companion case, the fact that property has
since been adversely possessed has no relevance to whether the Appellants may assert a cause of
action for fraud in connection with the 1931 agreement. 
            Fraud, the cause of action at issue, survives the death of the injured party under the common
law. Thus, under the facts of this case, the heirs have standing to bring suit. The trial court erred
in granting the pleas to the jurisdiction. 
The Claims Are Barred by the Four-Year Statute of Limitations
            Texaco and Mission Resources argue that the Appellants' claims are barred by the statute of
limitations. The Appellants respond that any statute of limitations was tolled by Texaco's and
Mission Resources' fraudulent concealment of the fraudulent inducement. We disagree. Even if
there is evidence of an underlying tort, the statute of limitations bars suit.
            Both Texaco and Mission Resources filed motions for summary judgment arguing that there
was no genuine issue of material fact and that they were entitled to judgment as a matter of law. 
These motions also argued there was no evidence of at least one of the elements of the Appellants'
causes of action. As such, these motions were both traditional and no-evidence summary judgment
motions. 
            To prevail on a traditional motion for summary judgment, a movant must establish that there
is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of
law. Tex. R. Civ. P. 166a(c). Summary judgment for a defendant is proper when the defendant
negates at least one element of each of the plaintiff's theories of recovery or pleads and conclusively
establishes each element of an affirmative defense. Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910,
911 (Tex. 1997); see Wornick Co. v. Casas, 856 S.W.2d 732, 733 (Tex. 1993). The movant has the
burden of showing there is no genuine issue of material fact and that he or she is entitled to judgment
as a matter of law. Tex. R. Civ. P. 166a(c); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d
671 (Tex. 1979); Baubles & Beads v. Louis Vuitton, S.A., 766 S.W.2d 377 (Tex. App.—Texarkana
1989, no writ). When reviewing a summary judgment, we take as true all evidence favorable to the
nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. 
Limestone Prods. Distribution, Inc. v. McNamara, 71 S.W.3d 308, 311 (Tex. 2002); Rhone-Poulenc,
Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999). On appeal, the movant must show that there is no
material fact issue and that the movant is entitled to judgment as a matter of law. McNamara, 71
S.W.3d at 311; Steel, 997 S.W.2d at 223.
            A no-evidence motion for summary judgment is essentially a pretrial motion for a directed
verdict. We apply the same legal sufficiency standard in reviewing a no-evidence summary
judgment as we apply in reviewing a directed verdict. King Ranch, Inc. v. Chapman, 118 S.W.3d
742, 750–51 (Tex. 2003). We must determine whether the nonmovant produced any evidence of
probative force to raise a fact issue on the material questions presented. Woodruff v. Wright, 51
S.W.3d 727, 734 (Tex. App.—Texarkana 2001, pet. denied); see Wal-Mart Stores, Inc. v. Rodriguez,
92 S.W.3d 502, 506 (Tex. 2002). 
A no evidence point will be sustained when (a) there is a complete absence of
evidence of a vital fact, (b) the court is barred by rules of law or of evidence from
giving weight to the only evidence offered to prove a vital fact, (c) the evidence
offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence
conclusively establishes the opposite of the vital fact.

Chapman, 118 S.W.3d at 751. We consider all the evidence in the light most favorable to the party
against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence
and inferences. Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). A
no-evidence summary judgment is improperly granted if the nonmovant presents more than a
scintilla of probative evidence to raise a genuine issue of material fact. Chapman, 118 S.W.3d at
751; Jackson v. Fiesta Mart, Inc., 979 S.W.2d 68, 70–71 (Tex. App.—Austin 1998, no pet.). More
than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable
and fair-minded people to differ in their conclusions." Havner, 953 S.W.2d at 711.
            The four-year statute of limitations applies to fraud. See Tex. Civ. Prac. & Rem. Code Ann.
§ 16.004 (Vernon 2002). A cause of action accrues, for the purposes of limitations, when the
claimant's injury occurs. Murphy v. Campbell, 964 S.W.2d 265, 270 (Tex. 1997). A defendant
moving for summary judgment on the affirmative defense of limitations has the burden to
(1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it
applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no
genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable
diligence should have discovered, the nature of its injury. KPMG Peat Marwick v. Harrison County
Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999). 
            The Appellants argue that limitations have been tolled due to fraudulent concealment.
Fraudulent concealment is an equitable defense to limitations that estops the defendant from relying
on the statute of limitations. Borderlon v. Peck, 661 S.W.2d 907, 908 (Tex. 1983). Fraudulent
concealment tolls the statute of limitations until the plaintiff, using reasonable diligence, discovered
or should have discovered the injury. KPMG Peat Marwick, 988 S.W.2d at 750. "The elements of
fraudulent concealment are: (1) the existence of the underlying tort; (2) the defendant's knowledge
of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable
reliance on the deception." Mitchell Energy Corp. v. Bartlett, 958 S.W.2d 430, 439 (Tex.
App.—Fort Worth 1997, pet. denied); see HECI Exploration Co. v. Neel, 982 S.W.2d 881, 886 (Tex.
1998). Fraudulent concealment tolls the statute of limitations due to "the defendant's active
suppression of the truth or failure to disclose when the defendant is under a duty to disclose." 
Bartlett, 958 S.W.2d at 439.
            The Appellants argue that Texaco, Mission Resources, and their predecessors filed fraudulent
well-spacing exceptions, fraudulently concealed their duty to disclose, and failed to correct an error
in a letter from Tidal Oil to Gregg Oil.


 The Appellants contend that a letter dated July 2, 1931,
addressed to J. C. Hunter, president of Gregg Oil, from W. W. Fleming, president of Mid-Kansas
Oil and Gas Company,


 represents "ground zero" of the fraud perpetrated by Gregg Oil. The letter
concerns the spacing of wells, rather than any agreement to defraud the Appellants' predecessors. 
The letter provides, in pertinent part, as follows:
In your letter you advise that you have made a proposed location on a lease
executed by the Texas & Pacific Railway Company to your Company covering the
railroad right of way immediately north and adjacent to our E. M. Nettleton farm . . . . 
It is further my understanding that this location will cause you to drill your well 49
feet from our north line. 
 
Mr. Hasson advises me that he has discussed this matter with Mr. Batenman
and you and that if we will agree to this location and not contest the location before
the Railroad Commission, you will agree to cooperate with us when we make a
location on our tract.
 
It would be our intention in agreeing to your location, that when we drill, not
to directly offset your well but to move to a location further east and at a selected
point further east locate a well to be considered an offset to this proposed location of
yours, putting it the same distance south of our north line that your well is north of
our north line. . . . . In other words, it would be the plan of both your Company and
ours to avoid unnecessary drilling and to avoid too close drilling of wells and to
stagger locations as drilling is demanded, rather than drill direct offsets close to each
other.
This letter and the well-spacing exceptions amount to no evidence of deception or an intent to
conceal the allegedly misleading nature of the recital in the 1931 document. 
            The Appellants argue that Union Pacific, Anadarko, and their predecessors fraudulently
concealed the alleged tort when they had a duty to disclose it. The Appellants cite McClung v.
Johnson, 620 S.W.2d 644, 647 (Tex. Civ. App.—Dallas 1981, writ ref'd n.r.e.). In McClung, the
Dallas Court of Appeals recognized that, in the context of an attorney-client relationship, the failure
to disclose may constitute fraudulent concealment. 
A duty to disclose may arise in four situations: (1) when there is a fiduciary
relationship; (2) when one voluntarily discloses information, the whole truth must be
disclosed; (3) when one makes a representation, new information must be disclosed
when that new information makes the earlier representation misleading or untrue; and
(4) when one makes a partial disclosure and conveys a false impression. 

Hoggett v. Brown, 971 S.W.2d 472, 487 (Tex. App.—Corpus Christi 1997, pet. denied); see Ralston
Purina Co. v. McKendrick, 850 S.W.2d 629, 633–36 (Tex. App.—San Antonio 1993, writ denied). 
We note that "Texas law has never recognized a fiduciary relationship between a lessee and royalty
owners." Neel, 982 S.W.2d at 888. Even if a fact issue exists concerning whether the allegedly
misleading recital created a duty to disclose, the Appellants have still not raised a fact issue
concerning fraudulent concealment.
            Fraudulent concealment requires actual knowledge by the defendant that a wrong has
occurred and "a fixed purpose to conceal the facts necessary for the plaintiff to know that it has a
cause of action." Santanna Natural Gas Corp. v. Hamon Operating Co., 954 S.W.2d 885, 890 (Tex.
App.—Austin 1997, pet. denied). The Appellants have presented no evidence that Texaco, Mission
Resources, or their predecessors intended to conceal the cause of action from the Appellants or for
the Appellants to have relied on the recital. The evidence merely indicates that there was some
confusion concerning the ownership of the Campbell tract. The Appellants introduced several letters
as summary judgment evidence, which indicates that, at one time, Tidal Oil questioned the
ownership of the Campbell tract. In addition, the Appellants argue that Tidal Oil should have
corrected its misstatement when it became aware of the Texas Supreme Court's decisions in Cox, 143
S.W.2d 361, and Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080 (1932),


 which were
both decided after the recital was made. However, there is no direct or even circumstantial evidence
that Texaco, Mission Resources, or their predecessors in interest knew the recital was false or had
a fixed purpose to conceal the cause of action from the Appellants.
            Finally, the Appellants should have discovered the injury long ago. Mineral interest owners
have an obligation to exercise due diligence to protect their interests. Neel, 982 S.W.2d at 886. The
doctrine of fraudulent concealment only tolls the statute of limitations until the plaintiffs, using
reasonable diligence, discovered or should have discovered the cause of action. KPMG Peat
Marwick, 988 S.W.2d at 750. 
            Since the 1930s, Gregg Oil and its successors have been extracting oil and gas from the
Campbell tract. The wells on the property were clearly visible, and there is no evidence that Gregg
Oil or its successors conducted their activities in a clandestine manner. This Court has held that
there is no fraudulent concealment when the "well sites were in plain view on the property." Taub
v. Houston Pipeline Co., 75 S.W.3d 606, 620 (Tex. App.—Texarkana 2002, pet. denied). Since the
1930s, Union Pacific, Anadarko, Fannie Campbell, and their predecessors have claimed ownership
of the Campbell tract in numerous public documents. During the past seventy years, the Appellants
would have discovered the allegedly misleading nature of the recital if they had exercised due
diligence. 
            The Appellants' evidence that Texaco, Mission Resources, and their predecessors
fraudulently concealed the underlying tort amounts to nothing more than mere suspicion. While
Texaco, Mission Resources, or their predecessors never informed the Appellants that they actually
owned the Campbell tract, "[a] record titleholder's ignorance of what [he or she] owns does not affect
the running of limitations." Natural Gas Pipeline Co. v. Pool, 124 S.W.3d 188, 198 (Tex. 2003). 
"[S]ome suspicion linked to other suspicion produces only more suspicion, which is not the same
as some evidence." Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925, 927 (Tex. 1993); see Pool,
124 S.W.3d at 198. The Appellants' claims amount to little more than suspicion based on the
unavailability of complete records more than seventy years later and the unavailability of witnesses. 
In this case, more than seventy years have elapsed since the complained-of acts. Many of the
corporations involved are no longer in existence, and most of the witnesses are no longer available. 
            None of these allegations create a fact issue concerning whether the defendants used
deception to conceal their actions. The Appellants failed to present more than a scintilla of evidence
of fraudulent concealment. Therefore, the statute of limitations was not tolled. Because the alleged
fraud occurred more than seventy years ago and the statute of limitations has not been tolled, Texaco
and Mission Resources proved as a matter of law that the four-year statute of limitations barred suit.
Conclusion
            Because the Appellants are the heirs to the alleged defrauded party and a cause of action for
fraud survives the death of the defrauded party, the Appellants have standing. Therefore, the trial
court erred in granting the pleas to the jurisdiction. However, there is no evidence of fraudulent
concealment tolling the statute of limitations. Thus, the statute of limitations bars suit. 
            We affirm the judgment of the trial court in part and reverse in part. We affirm the trial
court's granting of the motions for summary judgment of Mission Resources and Texaco. Because
Gas Solutions only filed a plea to the jurisdiction and the Appellants had standing to bring this suit,
we reverse as to Gas Solutions and remand for further proceedings consistent with this opinion.




                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          December 1, 2005
Date Decided:             February 17, 2006