**DOWLIN et al. v. BOYD et al.**
(No. 726—4653.)

(Commission of Appeals of Texas, Section B. March 2, 1927.)

1. **Appeal and error ⬅242(3)—General demurrer to petition, not being presented to trial judge, is treated as waived, unless it presents question of fundamental error.**

   Where general demurrer to petition was not presented to trial judge, and no action was taken thereon, generally appellate courts treat the matter as waived, unless demurrer presents question of fundamental error.

2. **Abatement and revival ⬅72(2)—Insane lessor's cause of action for fraud and deceit held to survive to heirs, where presumption obtains estate had no creditors.**

   Insane lessor's cause of action for damages, based on fraud and deceit of defendants in obtaining oil lease, *held* to survive to lessor's heirs, even in absence of allegation that no necessity existed for administration of lessor's estate, where it can be presumed that estate of lessor owed no debts, and heirs immediately inherited.

3. **Abatement and revival ⬅54—In cases of personal injury, if party thereto dies, no action can be supported by or against his personal representative.**

   In all cases of injury to the person, whether by assault, battery, false imprisonment, or slander, if either party who received or committed the injury dies, no action can be sup-

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ported by or against his personal representative.

**4. Common law ⊜⇒12—In Texas, common law is in force, if not inconsistent with Constitution and statutes.**

In Texas, the common law is in force in so far as not inconsistent with the Constitution and statute laws.

**5. Fraud ⊜⇒31—Defrauded party may sue at law for fraud or rescind.**

Defrauded party may stand on contract and recover damages at law for the fraud or rescind contract, return the thing bought, and receive back what he paid.

**6. Contracts ⊜⇒94(1)—To rescind contract for fraud, damages to plaintiff must be substantial.**

In action to rescind contract for fraud, amount of damages is immaterial, provided it is substantial.

**7. Cancellation of instruments ⊜⇒43—To cancel contract for fraud, allegation and proof that misrepresentation contributed to injury is necessary.**

In suit to cancel contract for fraud, it is necessary to allege and prove that misrepresentation was not only made but that it contributed to injury suffered, though misrepresentation was innocently made.

**8. Insane persons ⊜⇒66—Inadequate consideration, coupled with grantor's mental impairment, authorizes his legal representatives to affirm transaction and sue for consideration he should have received.**

Where there is inadequacy of consideration, coupled with mental impairment of grantor, transaction evidenced by instrument is unfair and inequitable, which grantor by legal representation may affirm, and sue to recover difference between consideration received and what he should have received.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Suit by Mrs. Martha A. Dowlin and others against J. F. Boyd and another. Judgment for defendants was affirmed by the Court of Civil Appeals (284 S. W. 636), and plaintiffs bring error. Affirmed in part, and reversed and rendered in part.

Taylor, Muse & Taylor and J. L. Lackey, all of Wichita Falls, for plaintiffs in error.

John C. Murphree, of Iowa Park, Tex., and Bullington, Boone, Humphrey, John King, and Cox, Fulton & Dickey, all of Wichita Falls, for defendants in error.

SHORT, J. The opinion of the court of Civil Appeals in this case is reported in 284 S. W. 636, where a very full statement of the case can be found. As the case has reached the Supreme Court, only a brief statement is necessary. This is a suit wherein the heirs at law of David Jackson, deceased, filed a suit in the district court of Wichita county, Tex., the petitioners being the plaintiffs in error

here, against J. P. Boyd and J. S. Owens for damages alleged to have accrued to them as such heirs by reason of the alleged fact that the defendants in error had perpetrated a fraud on their ancestor David Jackson, during his lifetime, when he was legally incapable of making the contract in the making of which the fraud was perpetrated. The contract was represented by an instrument of writing in the form of an oil lease given on 180 acres of land in Wichita county, Tex., wherein Jackson was induced to receive in full satisfaction of the rights granted a sum of money much less than the market value of such rights. The case was tried before the court with a jury, and, after the evidence had been heard, the trial court instructed a verdict for the defendant in error Boyd, and submitted the case to the jury against the defendant in error Owens on special issues, in answer to one of which as to the cash market value of the oil and gas lease at the time it was executed the jury answered that the cash market value was $250 per acre. Jackson had only received $75 per acre.

According to the answer to another special issue, David Jackson, at the time he executed and acknowledged the oil and gas lease on the 180 acres of land, was of unsound mind.

According to the answer to another special issue, the defendant in error Owens did not make any material misrepresentations to Jackson as to the condition of a certain oil well then in process of being completed in the neighborhood, the true condition of which at the time the lease was executed, being known to Jackson, he being sane prior to its execution, would have probably induced him to refuse to execute the lease prior to the execution of it.

According to the answer to another special issue Jackson did not know the condition of this well then about to be completed, and which resulted in making it an oil well before the time he accepted the money for the payment of the lease.

Based upon these findings, the court thereupon rendered judgment in favor of the defendant in error Owens as well as Boyd. The case was duly appealed to the Court of Civil Appeals at Fort Worth, and upon a hearing there the judgment rendered by the district court was affirmed.

As the case has reached the Supreme Court, the principal questions involved are whether the cause of action survives to the heirs of David Jackson, and also whether the plaintiffs' petition in the lower court was fatally defective, for the reason that it did not allege that there was no necessity for an administration on the estate of David Jackson, deceased. Such other questions as may be necessary to be discussed will be noted later.

In the discussion of all questions, the facts as found by the jury which were accepted by

the Court of Civil Appeals as being sustained by the testimony will be assumed to be the facts of the case. If the petition of the plaintiffs in error is fatally defective on account of its having failed to state there was no necessity for an administration on the estate of David Jackson, deceased, it will not be necessary to discuss the other question. Associate Justice Stayton, in Walker v. Abercrombie, 61 Tex. 71, uses this language in speaking of this subject:

"It is ordinarily true that the legal representative of a deceased person's estate is the proper person to maintain a suit to recover property of or a debt due to an estate; but that there are exceptions to this rule is well settled even in cases in which heirs or persons claiming rights derived from and through the deceased are the persons suing. Evans v. Oakley, 2 Tex. 185; Moore v. Morse, 2 Tex. 403; Lacy v. William's [Heirs], 8 Tex. 185; McIntyre v. Chappell, 4 Tex. 192; Cochran v. Thompson, 18 Tex. 656; Patton v. Gregory, 21 Tex. 517; Giddings v. Steele, 28 Tex. 748 [91 Am. Dec. 336]

"The rule is not an unbending one, and has its foundation in the necessity for giving protection to creditors of a deceased person, which in most cases makes it necessary to place the estate and its control in the hands of a legal representative, freed from interference by heirs, legatees or devisees, while such representative is in the lawful discharge of the trust.

"This rule does not exist for the benefit of debtors to the estate who are indisposed to pay what they justly owe to any one.

"Property vests in the legal representative of an estate only in a qualified manner and to a limited extent for a given purpose, and for all other purposes the title is in the heir from the instant of the death of the intestate."

[1, 2] While the answer of the defendants in error embraced a general demurrer, it (the demurrer) was not presented to the trial judge, and no action was taken thereon. Such being the situation with reference to the general demurrer, the general rule is that appellate courts treat the matter as having been waived, unless the general demurrer presents a question of fundamental error, as, for instance, that the error is of such nature as that it could not be cured by an amendment. Had there been a special exception leveled at the petition on account of the fact that no such allegation appeared therein, it is evident that the court would have sustained the exception, but would have permitted the plaintiffs in error to have filed a trial amendment alleging that no necessity existed for an administration on the estate of David Jackson, deceased, the petition containing the allegation that no administration on 'this estate existed. It may be presumed from the state of the record that the estate of David Jackson did not owe any debts, and, even in the absence of such a showing by the record, and in the absence of any special exception, as well as in the absence of any urging of a general demurrer, we are inclined to presume that the allega-tion in the petition that there was no administration on the estate of the deceased justified the trial court in presuming that there was no necessity therefor. Had the trial court reached the conclusion that the petition was fatally defective for this reason, it would not have allowed the plaintiffs to introduce any testimony, since the introduction of any quantity of testimony without sufficient pleading would have been a vain thing. Moreover, we are convinced that the record shows beyond doubt that this general rule to the effect that the legal representative of a deceased person's estate is the proper person to maintain a suit to recover property of or a debt due an estate is not applicable to this case, since it does appear there was no necessity to give protection to creditors; and, furthermore, it does appear that, if the defendants in error, or either of them, were debtors of the estate, the debt thus owed would go to the heirs only, since there were no creditors. In other words, the record justifies us in concluding that the heirs of Jackson inherited immediately upon his death the debt alleged to be due by the defendants in error. Veal v. Fortson, 57 Tex. 487; Hickman v. Stewart, 69 Tex. 255, 5 S. W. 833; Baker v. Streater (Tex. Civ. App.) 221 S. W. 1041; Beadle v. McCrabb (Tex. Civ. App.) 199 S. W. 355; Cheek v. Nicholson (Tex. Civ. App.) 133 S. W. 711. This question is embraced in assignments Nos. 10 and 11, and these assignments are sustained.

[3, 4] Whether a cause of action belonging to an individual during his lifetime after his death survives to his legal representatives such as his heirs at law has been the subject of much discussion by the appellate courts in the various states of the American Union. It may now be said to be a fixed rule established by the common law that in all cases of injuries to the person whether by assault, battery, false imprisonment, slander, or otherwise, if either party who received or committed the injury dies, no action can be supported either by or against the executors or other personal representatives. In this state the common law is in force in so far as not inconsistent with the Constitution and laws thereof, made so by statute. Taney v. Edwards, 27 Tex. 224; Texas & P. Ry. Co. v. Richards, 68 Tex. 375, 4 S. W. 627. Whatever apparent dissimilarity may be found in the decisions of the courts, generally speaking, arises out of the application of the facts in the cases wherein the opinions were written, either to the statute law or to the fixed rule of the common law. This was not a suit to cancel the contract made between Jackson and Owens, which would have been a pure and equitable proceeding, but is a suit at law for damages.

Stripped of its cumbersome habiliments, the petition is founded upon the simple statement that Jackson, the grantor and owner of the

oil and gas rights in the 180 acres of land, which were worth $250 an acre at the time he parted with these rights to Owens for $75 an acre, was insane, and that the plaintiffs in error, representing fifteen-sixteenths of the heirs at law of Jackson, who at the time of his death was the owner of the cause of action against Owens, who became the owner of such rights by virtue of having acquired them from an insane person at an unfair price, were entitled to recover the difference between the price paid to Jackson and the price the rights were worth to the extent of their interest as such heirs. "The true line of demarcation at common law separating those causes of action which survive, from those which do not, is that in the first the wrong complained of affects primarily and principally property and property rights, and the injuries to the person are merely incidental, while in the latter, the injury complained of is to the person, and the property and rights of property affected are merely incidental. In the former case the cause of action survives, while in the latter it abates." 1 Corpus Juris, par. 193, p. 174. In discussing this question, Justice Buck, for the Court of Civil Appeals in this case, in our opinion correctly says:

"That the true test is not so much as to the form of the cause of action as to the nature of the cause of action. Where the cause of action is a tort unconnected with contract, and which affects the person only, and not the estate, such as assault, libel, slander, and the like, there the rule 'actio personalis moritur cum persona' applies. But where, as in that case [referring to Kloepfer v. Forch, 32 Idaho, 415, 184 P. 477], the action is founded on a contract, it is virtually ex contractu, although nominally in tort and survives the death of either the plaintiff or the defendant."

[5, 6] The cause of action was in the nature of a suit for debt rather than a suit based on deceit or fraud wherein the damaged person relied upon the misrepresentations of the perpetrator thereof to his detriment. In the latter situation, a defrauded party to a contract may stand to the bargain and recover damages for the fraud, which is an action at law, or he may rescind the contract, return the thing bought, and receive back what he paid, which is an equitable action. In an action for rescission of a contract on the ground of fraud, the amount of damage is immaterial, provided it is substantial. But, in an action for damages based upon fraud, the amount of damages is material, since the defrauded party in such an action is only entitled to recover the amount he has been damaged as disclosed by the proof thereof. Russell v. Industrial Transportation Co., 113 Tex. 441, 251 S. W. 1034, 258 S. W. 462.

[7, 8] In all suits for the cancellation of contracts, based upon allegations of fraud, it is necessary to allege and prove that the misrepresentation was not only made, but that it contributed to the injury alleged to have been suffered, though the misrepresentation was innocently made. 2 Pomeroy's Equity Jurisprudence, par. 898. It will be noted that in actions to cancel contracts, based upon damages resulting from deceit or fraud, one of the material facts essential to a recovery is that a material misrepresentation, even though innocently made, must have induced the maker to execute the contract. It therefore logically follows that, where the person claimed to be defrauded was insane at the time the contract was executed, such misrepresentation becomes immaterial, since the person injured, being insane, could not have been influenced thereby. If this were not the rule, the law would give greater protection to the sane person than to the insane. Where there is an inadequacy of consideration, coupled with mental impairment of the grantor at the time the instrument was executed, the transaction evidenced by such instrument is an unfair and unequitable one which the grantor by legal representation may affirm, however, and bring a suit for damages to recover the difference between the consideration received and what he should have received. This, David Jackson, by next friend or guardian, in his lifetime could have done, and, inasmuch as this cause of action existed at the time of his death, it descended and vested in his heirs at law, who occupy the same relation to the rights belonging to Jackson in his lifetime which he occupied thereto. We therefore conclude that the cause of action belonging to David Jackson during his lifetime by reason of the findings of the jury descended and vested in his heirs at his death, and did not die with him. The Court of Civil Appeals reached the conclusion that the cause of action survived, but disposed of the case upon the erroneous idea that the cause of action survived to the administrator or executor, and not to the heirs, in the absence of an allegation in the petition that no necessity existed for an administration, coupled with the fact that Owens made no misrepresentation to Jackson. The assignments of error raising this question are sustained in so far as the same relate to the defendant in error Owens.

The trial court having instructed the jury to find the verdict for the defendant in error Boyd, concluding doubtless that no testimony sufficient to raise the issue of his liability had been presented, and the Court of Civil Appeals having reached the same conclusion, and inasmuch as we are in agreement with the conclusion reached by the Court of Civil Appeals as well as the district court in this matter, we therefore overrule all the assignments of error calling in question the correctness of the judgment rendered in favor of the defendant in error Boyd.

The material facts having been ascertained

by the verdict of the jury amply supported by testimony as found by the Court of Civil Appeals, and there being no question as to the heirship of the plaintiffs in error nor the quantity of land involved, the law having been declared applicable to those facts as stated in this opinion, we recommend that the judgments of the Court of Civil Appeals and of the district court as to the defendant in error Boyd be in all things affirmed, and that the judgment in favor of the defendant in error Owens rendered by the Court of Civil Appeals and that of the district court in his favor be reversed and rendered in favor of the plaintiffs in error to the effect that they have a judgment against defendant in error Owens for fifteen-sixteenths of the difference between the rights received by their ancestor and that which he should have received, to wit, $175 per acre for the 180 acres, which aggregates the sum of $29,531.25, together with 6 per cent. interest thereon from the 1st day of January, 1920, this being the date named in the petition from which interest is claimed, and that the plaintiffs in error recover of the defendant in error Owens all costs incurred in the Supreme Court, Court of Civil Appeals, and the district court.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals in part affirmed, and in part reversed and rendered in favor of plaintiff in error, as recommended by the Commission of Appeals.