COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


| | | |
|---|---|---|
| GILBERT J. MOORE, III, DOUGLAS WILLIAM MOORE, and ANN ELIZABETH MOORE HOLLAND | § | No. 08-23-00180-CV |
| | § | Appeal from the |
| | § | 112th Judicial District Court |
| Appellants, | § | of Pecos County, Texas |
| v. | § | (TC# P-12805-112-CV) |
| WEST BEND ENERGY PARTNERS, LLC, | § | |
| Appellee. | § | |
| | § | |

## MEMORANDUM OPINION

This case lies at the intersection of Texas real property law and federal bankruptcy practice—but it ultimately turns on our summary judgment standards. Here, the parties both assert ownership of royalty interests to the same land in Pecos County. Appellants Gilbert J. Moore, III, Douglas William Moore, and Elizbeth Moore Holland (collectively, the Moores) claim they own the interest through an inheritance from their father. Appellee West Bend Energy Partners, LLC claims that same interest was foreclosed on almost 40 years ago and following a series of transfers, it purchased the property. Responding to that claim, the Moores contend the prior foreclosure was void because it was done in violation of federal bankruptcy law.

Both parties filed competing motions for traditional summary judgment. The trial court granted West Bend's motion and denied the Moores' motion. Resolution of the motions turn in large part on what evidence we can consider from a 1985 bankruptcy proceeding where the U. S. Government's archived file has apparently been destroyed. After parsing those evidentiary questions, we conclude neither West Bend nor the Moores have carried their burden to show that they are entitled to judgment as a matter of law. For the reasons noted below, we reverse the grant of West Bend's motion, affirm the denial of the Moores' motion, and remand the case.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1975, the Moores' father, Gilbert J. Moore, Jr., granted the mineral interests in an undivided 54.71 acres of a 640-acre section of land (Section 19) to M.B.L.C., Inc., of which Gilbert was the president. In 1982, MBLC granted a deed of trust to First National Bank of Longview (which was later renamed to MBank Longview), securing a $808,000 loan with various properties, including "an undivided 8.5503445% interest" to all the royalties from oil, gas, and other minerals produced and mined from Section 19. In 1985, MBLC defaulted on the loan and, according to a docket sheet from the Bankruptcy Court of the Eastern District of Texas, filed for bankruptcy.[1] While that bankruptcy was pending, MBank exercised its right to a nonjudicial foreclosure and purchased the royalty interests at the foreclosure sale. The interests were transferred several times until 2018 when West Bend obtained a mineral and royalty deed for all its grantor's interests in Section 19.

After that purchase, West Bend learned that the Moores had been receiving the royalty payments from XTO Energy, Inc. who was producing minerals from Section 19. The Moores agree

---

[1] West Bend contests the admissibility of the docket sheet, but as we discuss later in the opinion, it is evidence of the fact that a bankruptcy was filed.

that they have received the royalty payments and add that they have also paid taxes on the mineral interests, as they claim ownership of those rights. West Bend then filed a suit to quiet title, for declaratory judgment, and for money had and received to recover royalties that they allege should have been paid to them.[2] The Moores answered, asserting affirmative defenses, including adverse possession and laches.

West Bend filed two motions for summary judgment—a traditional motion on their quiet title cause of action and a no-evidence motion on the Moores' affirmative defenses. The Moores filed their own traditional motion for summary judgment, arguing that West Bend does not have valid title to the royalty interests because the foreclosure sale was void and did not convey title to MBank or any of its subsequent purchasers. The Moores contend that because the sale was void, MBLC retained ownership of the interests and transferred those interests back to Gilbert, who then left the property to them in his will. The trial court granted West Bend's traditional motion for summary judgment and entered a final judgment, denying all other requested relief.

On appeal, the Moores' first issue challenges both the granting of West Bend's traditional motion for summary judgment and the denial of their motion for partial summary judgment. Their second issue argues that the trial court erred in granting West Bend's no-evidence motion on their affirmative defenses.[3] Their third issue asserts that the final judgment grants relief that was not pleaded and could not be granted.

---

[2] West Bend also asserted causes of action against XTO Energy, Inc, the owner of the working interest in the oil, gas, and mineral lease of the land. XTO is not a party to this appeal and those claims are not before us.

[3] We dispose of the Moores' second issue as it presents nothing for review. The trial court did not grant West Bend's no-evidence motion for summary judgment on the Moores' affirmative defenses. The trial court's order granting West Bend's motion for summary judgment expressly grants only its *traditional* motion. The trial court never made a ruling on the no-evidence motion for summary judgment. Therefore, we limit our review to the traditional motion and overrule issue two.

## II. SUMMARY JUDGMENT BURDEN AND STANDARD OF REVIEW

"We review summary judgments de novo." *BPX Operating Co. v. Strickhausen*, 629 S.W.3d 189, 195–96 (Tex. 2021). When the parties file competing motions for summary judgment, and the trial court grants one and denies the other, the appellate court may review both motions and render the judgment the trial court should have rendered. *Houle v. Casillas*, 594 S.W.3d 524, 541 (Tex. App.—El Paso 2019, no pet.) (citing *Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex. 1996)).

To be entitled to a traditional summary judgment, a party must show that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response." Tex. R. Civ. P. 166a(c). If the plaintiff is the movant in a traditional motion for summary judgment, it must conclusively establish each element of its cause of action as a matter of law. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986); *Zavala v. Franco*, 622 S.W.3d 612, 618 (Tex. App.—El Paso 2021, pet. denied). Once the movant establishes its right to summary judgment, the burden then shifts to the non-movant to present evidence which raises a genuine issue of material fact on the disputed issue. *See City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979).

A genuine issue of material fact is raised if reasonable and fair-minded jurors could differ in their conclusions considering all the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). In deciding whether a genuine issue precludes summary judgment, we must treat all evidence favorable to the non-movant as true and indulge every reasonable inference and resolve all doubts in its favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

West Bend moved for summary judgment only on its quiet title cause of action. Therefore, it was required to conclusively establish "(1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied). The parties do not dispute the second element–West Bend's title to the property is affected by the Moores' claims. For the first and third elements, West Bend contends that it conclusively met that burden with documents showing that the interests were foreclosed on pursuant to a deed of trust and ultimately conveyed to it.[4] On the other hand, the Moores challenge West Bend's title. They contend that they conclusively proved, or at least raised a genuine issue of material fact that West Bend's interests originate from a void foreclosure deed.

## III. ANALYSIS

### A. Preliminary issues

Before analyzing whether either party met their summary judgment burden, we first address two preliminary issues raised by West Bend: whether the Moores have "standing" to challenge the foreclosure and, if so, whether they are barred from doing so by the statute of limitations.

#### (1) Standing

West Bend argues that the Moores, who had no interest in the property at the time of the foreclosure, lack standing to challenge the foreclosure and trustee's deed.

---

[4] West Bend also contends that it established that the Moores' title was invalid because the Moores "did not present any evidence that their predecessor [Gilbert Moore, Jr.] was the sole shareholder of MBLC or that he had authority to assign interests on behalf of MBLC." West Bend filed a traditional motion for summary judgment. It was their burden to conclusively prove the elements of their claim and the Moores had no burden to present evidence until West Bend met that burden. *Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 252 (Tex. 2023).

We first make clear how we view the standing argument. Any discussion of standing must distinguish constitutional from prudential standing. *See Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125, (2014); *Pike v. Texas EMC Mgmt., LLC*, 610 S.W.3d 763, 774 (Tex. 2020). "Constitutional standing requires a concrete injury that is both traceable to the defendant's conduct and redressable by court order." *Pub. Util. Comm'n of Tex. v. Luminant Energy Co. LLC*, 691 S.W.3d 448, 457 (Tex. 2024) (quoting *Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*, 616 S.W.3d 558, 567 (Tex. 2021). "[S]tanding in the true constitutional sense of that term" implicates a court's jurisdiction to hear the case. *Pike*, 610 S.W.3d at 773–74. And we have an independent duty to raise constitutional standing on our own. *Tex. Right to Life v. Van Stean*, No. 23-0468, 2024 WL 4863170, at *2 (Tex. Nov. 22, 2024) (per curiam).

But courts often refer to standing in the prudential sense:

> In recent decades, however, we have adverted to a "prudential" branch of standing, a doctrine not derived from Article III and "not exhaustively defined" but encompassing (we have said) at least three broad principles: "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked."

*Lexmark Intern*, 572 U.S. at 126 (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12, (2004); *see also Pike*, 610 S.W.3d at 773–74 (quoting *Lexmark* and agreeing that statutory or prudential standing does not implicate subject-matter jurisdiction but determines whether a plaintiff falls within the class of persons authorized to sue). A plaintiff "does not lack standing in its proper, jurisdictional sense simply because he cannot prevail on the merits of his claim; he lacks standing when his claim of injury is too slight for a court to afford redress." *Pike*, 610 S.W.3d at 774. The Texas Supreme Court acknowledges (as do we) that "[s]ome of our older opinions use standing as a short-hand reference for a plaintiff's ability to fulfill some statutory prerequisite to

6

bringing suit or recovering on a claim." *Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 659 S.W.3d 424, 439 (Tex. 2023). Yet this imprecision "has tangled the line demarcating issues that truly implicate a trial court's subject-matter jurisdiction from those pertaining to the merits." *Id.* at 439–40. Thus we use the term standing here only to describe the prudential rule that allows or disallows one party to assert a claim or right of another.

Who then can challenge a foreclosure deed that is allegedly void under federal bankruptcy law? On this issue, the parties largely argue from a cluster of a few cases that address the question in the context of foreclosure sales generally. The most recent case from the Texas Supreme Court makes this statement of law:

> As a general rule, only the mortgagor or a party who is in privity with the mortgagor has standing to contest the validity of a foreclosure sale pursuant to the mortgagor's deed of trust. *Estelle v. Hart*, 55 S.W.2d 510, 513 (Tex. Comm'n. App.1932, opinion adopted); *Mercer v. Bludworth*, 715 S.W.2d 693, 698 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). However, when the third party has a property interest, whether legal or equitable, that will be affected by such a sale, the third party has standing to challenge such a sale to the extent that its rights will be affected by the sale. *American Savings & Loan Assoc. v. Musick*, 531 S.W.2d 581, 586 (Tex. 1976); *Estelle v. Hart*, 55 S.W.2d at 513.

*Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 489 (Tex. 1988). West Bend urges that *Goswami* and the cases it cites stand for the proposition that a party that challenges a foreclosure must have had some interest *at the time of the foreclosure*. And if that is the rule, it would preclude the Moore children's attack on a foreclosure more than 35 years ago on property that they had no interest in at the time. Conversely, the Moores contend that their claim to the royalty interest obtained through an inheritance is sufficient to give them standing to contest the earlier foreclosure.

One take-away from these cases is the distinction between challenges rendering a foreclosure sale *void* and one that would make it *voidable*. *See Mercer v. Bludworth*, 715 S.W.2d

7

693, 695 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), *disapproved on other grounds by Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890 (Tex. 1991). In *Mercer*, the plaintiff argued that he had standing to complain of the sufficiency of the notice of the trustee's sale. *Id.* at 698. The court disagreed, because the conduct complained of would only make the sale voidable, and not void. *Id.* at 698 ("But a party having no privity with the mortgagor may not complain of mere irregularities that would merely render the sale voidable."). Yet the *Mercer* court makes this statement in its description of the law: "A *subsequent purchaser* or junior lienholder may collaterally attack the sale if it is entirely void." *Id.* at 698 (citing *Estelle v. Hart*, 55 S.W.2d at 510–513) (emphasis supplied); *see also Elbar Investments, Inc. v. Wilkinson*, No. 14-99-00297-CV, 2003 WL 22176624, at \*2 (Tex. App.—Houston [14th Dist.] Sept. 23, 2003, pet. denied) (mem. op.) (same).

Our careful review of *Goswami*, *Estelle v. Hart*, and *American Savings & Loan Assoc. v. Musick* shows that each of the parties challenging the respective foreclosure had some legal or equitable interest in the property at the time of the foreclosure. *Goswami*, 751 S.W.2d at 489 (the plaintiff had signed a lease/option to buy the property before the foreclosure sale); *Estelle*, 55 S.W.2d at 510–513 (the plaintiffs had a recorded judgment lien at the time of the foreclosure sale); *Musick*, 531 S.W.2d at 586 (the plaintiff was the intended beneficiary of an oral agreement giving her an interest in the property at the time of the foreclosure sale). Yet none of the decisions expressly tie the timing of the interest to the holding of the case.[5]

---

[5] We could say the same about other cases that the Moores rely on. *See Henry v. Mr. M Convenience Stores, Inc.*, 543 S.W.2d 393, 396 (Tex. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.) (the party challenging a deed of trust had a pending contract to buy the property *before* the deed of trust had been created); *Morlock, L.L.C. v. Nationstar Mortg., L.L.C.*, 447 S.W.3d 42, 43 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (a party who obtained title to land in a foreclosure sale had standing to challenge a *subsequent* foreclosure sale conveying the same land to another party).

West Bend directs us to other non-binding authority that expressly references a timing component. *See Ursic v. NBC Bank S. Tex., N.A.*, 827 S.W.2d 334, 336 (Tex. App.—Corpus Christi 1991, writ denied) ("To contest a bank's foreclosure of a deed of trust, a party must, at the time of the foreclosure, either 1) be the mortgagor under the deed of trust or be in privity with the mortgagor, or 2) have an ownership interest in the property affected by the foreclosure.") (citing *Goswami*, 751 S.W.2d at 489); *Burnett v. Bank of New YorkMellon*, No. 13-12-00474-CV, 2014 WL 8097058, at *9 (Tex. App.—Corpus Christi Mar. 20, 2014, no pet.) (mem. op.) ("The relevant consideration . . . is whether Burnett produced evidence showing that he held any ownership interest in the Property at the time of foreclosure."); *Padilla v. Deutsche Bank Tr. Co. Nat'l Ass'n for Long Beach Tr. Fund, 2006-3*, No. SA-11-CA-341-OLG(JWP), 2011 WL 13235043, at *2 (W.D. Tex. Oct. 31, 2011) (mem. op.), report and recommendation adopted sub nom. *Padilla for Padilla Fam. Tr. v. Deutsche Bank Tr. Co. Nat'l Ass'n for Long Beach Tr. Fund*, 2006-3, No. CV SA-11-CA-341-OG, 2012 WL 13032889 (W.D. Tex. Jan. 9, 2012) (stating that it was "unclear" how the plaintiffs had standing to challenge a foreclosure for property acquired after the foreclosure sale). But the Moores cite to one line of cases—involving void encumbrances on homestead property—where the timing of ownership in the property was not a consideration. *See Florey v. Estate of McConnell*, 212 S.W.3d 439 (Tex. App.—Austin 2006, pet. denied) (wife's estate had standing to challenge deed of trust husband placed on homestead property after wife's death); *J.P. Wooten Motor Co. v. First Bank of Swenson*, 281 S.W. 196, 197 (Tex. Comm'n App. 1926) ("The mortgage in this case being void, as above defined, Osborn and wife could sell their property to whomsoever they pleased, and the purchaser, whether with or without notice of such instrument, was not bound in any respect whatever thereby.").

Focused on the rights of those who inherit property interests, the Texarkana Court of Appeals concluded that the heirs of a deceased party had standing to assert a claim for injury to property. *Glover v. Union Pac. R. Co.*, 187 S.W.3d 201, 209–10 (Tex. App.—Texarkana 2006, pet. denied). The cause of action at issue there arose from a defendant's failure to account to the heirs and their predecessors for mineral interests they held in a tract of land. *Id*. As here, the defendants argued the heirs lack standing because they did not own the property when the cause of action accrued. *Id.* at 209. Prior cases from that court had held that "plaintiffs lacked standing when any injury to the property occurred before the plaintiffs purchased the property and their deeds contained no assignment of any cause of action." *Id.* (citing *Cook v. Exxon Corp.*, 145 S.W.3d 776, 780 (Tex. App.—Texarkana 2004, no pet.) and *Denman v. Citgo Pipeline Co.*, 123 S.W.3d 728, 732 (Tex. App.—Texarkana 2003, no pet.)). Under those cases, without an express assignment provision, a cause of action does not pass to a subsequent purchaser of the property who then cannot recover for an injury committed before his or her purchase. *Id.*

Yet the *Glover* court distinguished those cases because the claimants before it were not "subsequent purchasers of the property, but rather the heirs of the deceased party." *Id.* "Therefore, the issue is whether the cause of action survived the death of the originally injured party." *Id*. And turning to that question, the court focused on "whether the survivability of the cause is controlled by common law principles or whether a statute provides for survival." Concluding that the common law controlled, the court looked to the "nature or substance of the cause of action rather than the form in which it is asserted." *Id.* (citing *Dowlin v. Boyd*, 291 S.W. 1095, 1098 (Tex. Comm'n App.1927, judgm't adopted)). And under the common law, a suit for injury to personal or real property will survive the death of the decedent and pass to the heirs of the decedent.

10

*Id.* (citing *Dowlin*, 291 S.W. at 1098; *Hackworth*, 673 S.W.2d at 220; *Pace v. McEwen*, 574 S.W.2d 792, 800 (Tex. App.—El Paso 1978, writ ref'd n.r.e.)).[6]

Accordingly, the controlling analysis in *Glover*, as here, relates to the transferability of claims to heirs—whether a particular type of claim survives the claimant's death. *Id.*; *see also Smith v. O'Donnell*, 288 S.W.3d 417, 421 (Tex. 2009) ("At common law, actions for damage to real or personal property survive the death of the owner."); *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780, 784 (Tex. 2006) ("[A]bsent a statute providing to the contrary, a cause of action that is penal or personal in nature typically does not survive, while claims that are contractual in nature or affect property rights survive the death of either party."); *First Nat. Bank of Kerrville v. Hackworth*, 673 S.W.2d 218, 220 (Tex. App.—San Antonio 1984, no writ) ("At common law, actions affecting primarily property and property rights survived, whereas an action asserting a purely personal right terminated with the death of the aggrieved party.").[7]

We therefore reject West Bend's prudential standing challenge.

### (2) Statute of limitations

Relatedly, West Bend also argues that the Moores' challenge to the validity of the foreclosure and substitute trustee's deed is barred by the statute of limitations. That is, the

---

[6] *Dowlin* offers this test to distinguish those claims that survive and those that do not:

> The true line of demarcation at common law separating those causes of action which survive, from those which do not, is that in the first, the wrong complained of affects primarily and principally property and property rights, and the injuries to the person are merely incidental, while in the latter, the injury complained of is to the person, and the property and rights of property affected are merely incidental. In the former case the cause of action survives, while in the latter it abates.

*Dowlin*, 291 S.W. at 1098.

[7] Another twist here is that the Moores do have some interest in Section 19. While MBLC's *royalty* interests in the property were foreclosed on, the other "bundle of the sticks" of mineral interests were not. *See Ridgefield Permian, LLC v. Diamondback E & P LLC*, 626 S.W.3d 357, 363 (Tex. App.—El Paso 2021, pet. denied) (describing the five attributes in a severed mineral estate). We take no position on whether holding other sticks in the bundle would also give the Moores standing to assert their claim to the contested royalty right.

11

*arguments* they raise attacking the trustee's sale as outlined below are barred by limitations. For that proposition, West Bend relies on a subsection of the Civil Practice and Remedies Code limitations for real property actions:

> A person with a right of action for the recovery of real property or an interest in real property conveyed by an instrument with one of the following defects must bring suit not later than two years after the day the instrument was filed for record with the county clerk of the county where the real property is located:
>
> .   .   .
>
> (7) execution of the instrument by a trustee without record of the authority of the trustee or proof of the facts recited in the instrument.

Tex. Civ. Prac. & Rem. Code § 16.033(a)(7).

But as the Moores point out, this limitation bars *filing* a suit, not *defending* against a suit to quiet title. The San Antonio Court of Appeals made that point in a trespass to try title suit over a disputed 1994 deed. *W. 17th Res., LLC v. Pawelek*, 482 S.W.3d 690, 694 (Tex. App.—San Antonio 2015, pet. denied). The court rejected the plaintiff's attempt to use § 16.033(a) against the defendant's theory of holding title. *Id*. ("The Paweleks did not bring suit; Appellants did. If section 16.033(a) applies in this case, it applies to Appellants only."). And earlier authority made the same point: "[I]f the subject-matter of the defense be of an intrinsically defensive nature, which, if given effect, will operate merely as a negation of the plaintiff's asserted right to recover, or in abatement, either wholly or partially, of the amount claimed, the statute of limitation does not apply." *Morriss-Buick Co. v. Davis*, 91 S.W.2d 313, 314 (Tex. Comm'n App. 1936); *Browne v. Ortiz*, 657 S.W.3d 704, 709 (Tex. App.—El Paso 2022, no pet.) (same).

The Moores' argument that West Bend's title is invalid attacks an element of West Bend's causes of action. It is a defensive claim. The Moores are not barred by limitations from defending

against West Bend's suit on the ground that the foreclosure and sale were void and did not validly transfer title to the royalty interests.[8]

### B. Summary judgment evidence

#### (1) Presumptions

To conclusively prove that it holds title, West Bend relies on the presumption that foreclosures are valid and that recitals in the substitute trustee's deed are true. But presumptions cannot help West Bend at the summary judgment stage. "At trial, a presumption operates to establish a fact until rebutted, but not in summary judgment proceedings." *Chavez v. Kansas City S. Ry. Co.*, 520 S.W.3d 898, 899 (Tex. 2017) (per curiam) (internal citations omitted). A summary judgment movant "may not use a presumption to shift the burden to a non-movant." *Id.* at 900. Rather than the non-movant having the burden to rebut the presumption, the movant must show that the non-movant is unable rebut the presumption. *Id.* For example, we recently held that a summary judgment movant could not rely on the presumption that property obtained during marriage is community property and instead had the burden of proving that property was purchased with community funds. *Stillwell v. Stevenson*, 668 S.W.3d 844, 854–55 (Tex. App.—El Paso 2023, pet. denied).

Therefore, to succeed at the summary judgment stage of litigation when the validity of the deed is at issue, West Bend could not simply rely on a presumption to shift its burden to the Moores.

---

[8] We acknowledge the paradox that had XTO Energy, Inc. as the operator chosen to pay West Bend the royalty interest, and the Moores had to file suit, then § 16.033(a)(7) would more logically apply given the statutory language. Because that circumstance does not apply to this case, we leave that question for another day.

### (2) Was the foreclosure sale void?

#### (a) Violation of bankruptcy stay

Aside from attacking the presumption, the Moores contend that the nonjudicial foreclosure was accomplished while MBLC was in bankruptcy. The filing of a bankruptcy automatically stays all collection activities; those in violation of the stay are void. 11 U.S.C.A. §362(a)(3); *Cont'l Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499, 501 (Tex. 1988) (per curiam); *Johnson v. Liberty Cnty.*, No. 09-15-00410-CV, 2016 WL 4040143, at *6 (Tex. App.—Beaumont July 28, 2016, no pet.) (mem. op.) ("Longstanding and controlling precedent from the Texas Supreme Court provides that an attempt to transfer real property in the State of Texas that is done in violation of an automatic stay is void, not voidable."). Consequently, "[a] foreclosure sale that occurs during the automatic stay is void and passes no title." *Stephens v. Hemyari*, 216 S.W.3d 526, 529 (Tex. App.—Dallas 2007, pet. denied); *Johnson*, 2016 WL 4040143, at *7 ("We further conclude that because the deed to Liberty County was void [due to the bankruptcy stay], Liberty County could not pass any right, title, or interest to Zavala in the Property.").

In support of this argument, the Moores submitted a docket sheet from the bankruptcy court.[9] West Bend objected to the consideration of the docket sheet, but alternatively argued its entries show how the automatic stay was lifted because a motion to lift the stay was filed and not heard within thirty days. 11 U.S.C.A. § 362(e)(1) ("Thirty days after a request [to modify the stay] . . . such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect . . . ."). Alternatively, West Bend argues that the bankruptcy court could have "retroactively validate[d]" any sale that violated

---

[9] The Moores contend that the bankruptcy court's file has been destroyed because of its age. West Bend stops short of admitting that there had been a bankruptcy, but states in its petition that it was informed by the National Archives and Record Administration that the alleged bankruptcy proceedings had since been destroyed.

the bankruptcy stay and that "could very likely have been the stated reason MBank's claim was disallowed."

Conversely, the Moores, also relying on entries in the docket sheet, argue that by agreeing to or failing to oppose a hearing set more than 30 days after filing the motion to lift the stay, West Bend waived its rights to the automatic termination of the stay. According to the docket sheet, MBank filed the motion to lift the stay on September 30, 1985, with a hearing scheduled for November 8, 1985, that was then rescheduled for November 25, 1985. In that case, the Moores urge that the automatic lifting of the stay does not apply. *See In re King*, No. 11-40725-H3-13, 2013 WL 5723325, at *2 (Bankr. S.D. Tex. Oct. 18, 2013) (mem. op.) ("When a creditor agrees to or fails to oppose a hearing that is inconsistent with adherence to the time constraints of section 362(e), it results in an implicit waiver of the statutorily granted rights of section 362(e).").

We first address a preliminary issue raised by West Bend: whether the docket sheet is admissible, and if not, if the Moores have raised any evidence of a violation of the automatic stay.

To raise a fact issue on whether the foreclosure occurred during an automatic bankruptcy stay and was therefore void, the Moores submitted a docket sheet from the bankruptcy court showing that MLBC filed bankruptcy on July 2, 1985. They also submitted pleadings filed in the bankruptcy case that one of the Moores found in Gilbert Moore's personal papers, including: a motion by the trustee dated May 7, 1986, to sell oil and gas interests in some Oklahoma property for MBank's benefit; and a motion by MBank dated May 7, 1986, asking that it be allowed to offset property and use collateral. They also submitted a file-stamped order dated February 9, 1988, by United States District Judge Robert Parker reassigning an adversary proceeding from the case

15

to United States Magistrate Harry W. McKee.[10] West Bend's proof showed that MBank's non-judicial foreclosure was posted on December 3, 1985 culminating in a deed on January 6, 1986.

West Bend objected to this evidence but did not obtain an express ruling granting its objection. Generally, a trial court must either expressly or implicitly rule on an objection to summary judgment evidence for an issue to be preserved for review. *Bates v. Pecos Cnty.*, 546 S.W.3d 277, 285 (Tex. App.—El Paso 2017, no pet.); Tex. R. App. P. 33.1(a)(2)(A). But there is disagreement among the courts of appeals whether the party seeking *affirmance* must have objected to summary judgment evidence and obtained a ruling to challenge the evidence on appeal. *Compare Bray v. Fuselier*, 107 S.W.3d 765, 769 (Tex. App.—Texarkana 2003, pet. denied) ("A party who seeks to affirm summary judgment must object to defects in the form of summary judgment affidavits at the trial level."), *with Ceballos v. El Paso Health Care Sys.*, 881 S.W.2d 439, 444 (Tex. App.—El Paso 1994, writ denied) (stating in dicta that Rule 166a(f), requiring an objection and ruling, only applies to parties seeking reversal of a judgment). Because we hold that the objection is unfounded, we do not decide whether West Bend was required to obtain a ruling.

We review evidentiary rulings in connection with a summary judgment motion under the abuse of discretion standard. *Gilbert v. Kalman*, 650 S.W.3d 135, 143 (Tex. App.—El Paso 2021, no pet.) (citing *Starwood Management LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017) (per curiam)). And our review of that discretion turns on whether the trial court acted "without reference to any guiding rules and principles." *Id.* (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

---

[10] The cause number on each of the two pleadings is TY-85-00607, and one pleading and the order use the same Adversary Number: A-85-286. The same pleading and adversary cause numbers appear on the docket sheet, which lends some credence to the filing date in 1985 as shown on the docket sheet.

Focusing on the docket sheet, West Bend claims it is not authenticated. We can easily dispose of that objection: the docket sheet is a certified copy of a public record and is therefore self-authenticating. Tex. R. Evid. 902(4).[11] Second, West Bend argues that a docket sheet is not substantive evidence. "A docket sheet entry ordinarily forms no part of the record which may be considered; rather, it is a memorandum made for the trial court and clerk's convenience." *Garza v. Tex. Alcoholic Beverage Comm'n*, 83 S.W.3d 161, 167 (Tex. App.—El Paso 2000), *aff'd*, 89 S.W.3d 1 (Tex. 2002). We have stated that a "docket sheet entry is inherently unreliable because it lacks the formality of an order or a judgment." *Kalyanaram v. Burck*, 225 S.W.3d 291, 303 (Tex. App.—El Paso 2006, no pet.) (declining to consider a docket sheet to contradict a written order of the trial court); *see also Springer v. American Zurich Ins. Co*., 115 S.W.3d 582, 587–88 (Tex. App.—Waco 2003, pet. denied) (holding that trial court's ruling was determined by actual order, not by conflicting docket sheet entry). And a docket cannot substitute for a written order or judgment. *Faulkner v. Culver*, 851 S.W.2d 187, 188 (Tex. 1993) (per curiam); *Garza*, 83 S.W.3d at 167.

But a docket sheet can be used as evidence of other matters. A docket sheet can show the existence of a case and the date it was filed. *Williams Farms Produce Sales, Inc. v. R & G Produce Co.*, 443 S.W.3d 250, 259 (Tex. App.—Corpus Christi 2014, no pet.). It "may be some evidence that an event or action occurred on a particular date." *Nava v. Schmidt*, No. 04-22-00686-CV, 2023 WL 7005843, at *5 (Tex. App.—San Antonio Oct. 25, 2023, pet. denied) (mem. op.). In this case,

---

[11] In addition, Ann Elizabeth Moore Holland declared under penalty of perjury that the docket sheet is "is a true and correct copy of a Docket Sheet from the U.S. Bankruptcy Court for the Eastern District of Texas, Tyler, for Docket No. TY-85-00607 with respect to Debtor M.B.L.C., Inc., which I obtained from the U.S. Bankruptcy Court for the Eastern District Texas in Tyler, Texas after my father died." *See ESIS, Inc. v. Johnson*, 908 S.W.2d 554, 561 (Tex. App.—Fort Worth 1995, writ denied) ("A copy of a public record is considered authentic if a sponsoring witness vouches for its authenticity or if the document meets the certification requirements for self-authentication contained in [Texas Rule of Evidence] 902.").

the bankruptcy case docket is not being used to replace a court order. It is being used to show that a bankruptcy was pending at the time of the foreclosure, and it is admissible for that purpose. But we agree that its descriptive entries of filings of various motions and orders are not substitutes for showing what those motions or orders may or may not have asserted. Just like a docket sheet does not replace a written order or judgment, it cannot replace a pleading.

And based on that view, the parties' respective arguments over how the intricacies of federal bankruptcy practice played out in the prior bankruptcy case falters. That is, whether a motion to modify the stay was filed and set for hearing in such a way that the motion was automatically granted (West Bend's theory), or the hearing was rescheduled so that there was no lifting of the stay (the Moores' theory), must turn on proofs much more compelling than a bare docket sheet. Both parties describe plausible scenarios, but both require that we speculate—either that the motion to modify the stay resulted in an automatic lifting of the stay after 30 days, or that it did not because West Bend did not oppose the hearing settings, or that the bankruptcy court later validated the sale, or that the foreclosure sale was the reason MBank's claim was disallowed. "Speculation, of course, is not evidence, let alone conclusive evidence, and it cannot support summary judgment." *Rollins v. Pressler*, 623 S.W.3d 918, 937–38 (Tex. App.—Houston [1st Dist.] 2021, pet. denied) (citing *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 164 (Tex. 2004); *Mariner Fin. Grp. v. Bossley*, 79 S.W.3d 30, 34 (Tex. 2002)).

The most that can be said of the record is that there is some evidence that MLBC filed for bankruptcy in July 1985, and that bankruptcy extended into 1988.[12] Under federal law, an

---

[12] One of the exhibits the Moores rely on is the copy of a file stamped order dated February 9, 1988, by United States District Judge Robert Parker reassigning the adversary proceeding from the case to United States Magistrate Harry W. McKee. To prove up that document, Ann Elizabeth Moore swore that she obtained it from a on online government website at "https://www.txed.uscourts.gov/sites/default/files/goFiles/GO-88-09%20GENERAL%20ORDER%20AS %20TO%20WITHDRAWAL%20OF%20REF.%20AND%20SCHEDULING%20OF%20NON-JURY%20BANK

automatic stay attaches to a debtor's property once the bankruptcy is filed which would, absent a lift of the stay, preclude a nonjudicial foreclosure. The foreclosure occurred while the bankruptcy was pending. Once the Moores put on some evidence of these matters, it became West Bend's burden to conclusively prove some basis for avoiding the automatic stay. And conversely, nor have the Moores discharged the burden under their traditional motion for summary judgment to prove that the stay was violated. Because a genuine issue of material fact issue exists about whether the foreclosure violated a bankruptcy stay, neither party is entitled to summary judgment.

### (b)  Proper notice of the foreclosure sale

The Moores' traditional motion for summary judgment argues that the foreclosure sale is void for failure to provide proper notice. The deed of trust named Thomas H. "Buddy" Richter as trustee. On November 7, 1985, MBank appointed Jason Searcy as substitute trustee and requested that he sell the royalty interests at issue after 21-days' notice. On November 27, 1985, MBank appointed Martin O. Adams as substitute trustee, noting that Searcy had "resigned and/or refused to act" and similarly instructed him to sell the property after 21-days' notice. The property was sold on December 3, 1985. The Moores claim that the foreclosure sale was invalid because Adams was not appointed trustee until six days before the sale and so could not have given 21-days' notice as required by both the deed of trust and the Property Code. Tex. Prop. Code Ann § 51.002.[13] The Moores' argument fails for two reasons.

---

RUPT%20CASES%201988-02-43209.PDF.pdf)." That statement provides one basis to authenticate the order. *See Williams Farms Produce Sales, Inc. v. R & G Produce Co.*, 443 S.W.3d 250, 259 (Tex. App.—Corpus Christi 2014, no pet.) (pleading obtained from on-line government website were self-authenticating).

[13] In 1985, the Texas Property Code required 21-days' notice before a foreclosure sale as it does today. Act of July 12, 1984, 68th Leg. 2 C.S., ch. 18 §3, 1985 Tex. Gen. Laws, 94 (now codified at Tex. Prop. Code Ann. § 51.002(b)).

First, unlike a violation of a bankruptcy stay, improper notice does not render a foreclosure sale void and a subsequent vendee cannot challenge a sale on those grounds. *Tex. Osage Co-op. Royalty Pool v. Crighton*, 188 S.W.2d 230, 233–34 (Tex. App. 1945, writ ref'd) ("a subsequent vendee will not be heard to complain of the manner of notice given of trustee's sale"); *Elbar Investments, Inc. v. Wilkinson*, No. 14-99-00297-CV, 2003 WL 22176624, at \*2 (Tex. App.—Houston [1st Dist.] Sept. 23, 2003, pet. denied) (mem. op.) ("A party having no privity with the mortgagor may not complain of irregularities that would render the sale merely voidable, including complaints regarding the manner of notice").

Second, even if the Moores could challenge notice, they have not conclusively proved that it was done improperly. "[I]t has long been settled in Texas that when a substitute trustee signs and posts a notice prior to the substitute trustee's appointment, the subsequent post-appointment acts of the substitute trustee have the effect of ratifying and affirming his pre-appointment acts." *Calvillo v. Carrington Mortg. Services*, 487 S.W.3d 626, 631–32 (Tex. App.—El Paso 2015, pet. denied), (citing *Chandler v. Guar. Mortgage Co.*, 89 S.W.2d 250, 254 (Tex. App.—San Antonio 1935, no writ)). In his affidavit, Adams attested that he posted and served notice of the sale on November 8, 1985. Although he was not appointed trustee on November 8 and did not have the authority to take any action in furtherance of foreclosure, his actions after he was appointed ratified his earlier ones.

Because the deed is not void for improper notice, denial of the Moore's traditional motion for summary judgment on this ground was proper.

### (3) Bona fide purchaser

West Bend also claims that even if its title is void, it conclusively established its ownership of the royalty interests because it is a bona fide purchaser. To claim the protections of a bona fide

purchaser, "one must acquire property in good faith, for value, and without notice of any third-party claim or interest." *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001). The Moores answer that West Bend cannot claim bona fide purchaser protection for two reasons: first because they obtained the property through a quitclaim deed and second because the foreclosure sale is void.[14]

A quitclaim deed differs from a warranty deed because it does not convey property; it only conveys whatever rights the grantor has, which may be nothing. *Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.*, 161 S.W.3d 482, 486 (Tex. 2005). Because "[a] quitclaim deed conveys upon its face doubts about a grantor's interest and a buyer is necessarily put on notice as to those doubts," one with a quitclaim deed cannot claim the protections of a bona fide purchaser. *S. Plains Switching, Ltd. Co. v. BNSF Ry. Co.*, 255 S.W.3d 690, 707 (Tex. App.—Amarillo 2008, pet. denied); *Richardson v. Levi*, 3 S.W. 444, 446 (Tex. 1887). Whether a deed is a quitclaim deed is determined by the language of the deed as a whole and whether it "discloses a purpose to convey the property itself, as distinguished from the mere right, title, or interest of the grantor." *Chicago Title Ins. v. Cochran Investments, Inc.*, 602 S.W.3d 895, 901 (Tex. 2020).

The deed to West Bend from its immediate predecessor in interest contains some hallmarks of a quitclaim deed. It does not transfer the property, but "Grantor's right, title and interest in and to . . . the property." Yet it also contains the grantor's warranty of title "against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through, and under the grantor, but not otherwise." As we recently held, "a deed containing a special warranty is not a quitclaim deed because it gives the grantee recourse against the grantor." *Lockhart as Tr. of*

---

[14] At the trial court, West Bend cited to 11 U.S.C. § 549(c) as authority that it was a bona fide purchaser. That section provides an exception to a bankruptcy trustee's power to avoid transfers when there is a voluntary sale to a purchaser without notice of the bankruptcy. 11 U.S.C. § 549(c). MBank, the purchaser at the foreclosure sale, was not a bona fide purchaser under this section because it, as creditor and party to the bankruptcy, had notice of the bankruptcy. West Bend does not urge this exception in its brief.

21

*Lockhart Fam. Bypass Tr. v. Chisos Minerals, LLC*, 621 S.W.3d 89, 109 (Tex. App.—El Paso 2021, pet. denied). Because the deed to West Bend is not a quitclaim deed, it does not on its face prevent West Bend from claiming the status of a bona fide purchaser.

That said, bona fide purchaser protection is not available when the chain of title includes a void deed. "Typically, a void deed in the chain of title would foreclose the bona-fide purchaser defense." *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 549 (Tex. 2016); *see also Sanchez v. Telles*, 960 S.W.2d 762, 768 (Tex. App.—El Paso 1997, pet. denied) ("A deed which is void cannot pass title even to an innocent purchaser from the grantee."); *Orca Assets, G.P., LLC v. Dorfman*, 470 S.W.3d 153, 164–65 (Tex. App.—Fort Worth 2015, pet. denied) (stating "a party cannot be a bona fide purchaser for value when its chain of title includes a void deed"); *Diversified, Inc. v. Walker*, 702 S.W.2d 717, 721 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) (stating bona fide purchaser defense "does not apply to a purchaser at a *void* foreclosure sale") (emphasis in original).

West Bend cannot be a bona fide purchaser if a deed in its chain of title is void. Because there is some evidence in the record to support the Moores' claim the deed was void, West Bend has not carried its burden under its traditional motion for summary judgment to prove it is a bona fide purchaser.

**(4)  Estoppel**

West Bend's traditional motion for summary judgment asserted a third ground: "Even if the Trustee's Deed is invalid as the Moore Defendants' suggest (it is not), West Bend took as an innocent purchaser and the Moore Defendants are estopped from asserting that it is invalid." West Bend contends that it has both legal and equitable title. Its motion urges that "even assuming there was a stay in place in the alleged bankruptcy proceeding" it would be wholly inequitable to allow

22

the Moores "almost forty years after the foreclosure sale" to challenge its title, and the Moores should be "estopped from claiming otherwise."

In support of their argument, West Bend relies on the Texas Supreme Court's decision in *Slaughter v. Qualls.* There, Qualls signed a deed of trust securing a loan held by Slaughter. *Slaughter v. Qualls*, 162 S.W.2d 671, 673 (1942). Slaughter foreclosed and purchased the property at the foreclosure sale. *Id.* A jury found that Qualls was not in default on the loan at the time of the foreclosure. *Id.* at 674. The Court held that this rendered the sale and trustee's deed void. *Id.* at 675. The Court later noted, however, that as to subsequent purchasers from Slaughter, Qualls would be estopped from denying the validity of the foreclosure:

> It is true that under circumstances such as we have here, those who purchased interests in or took liens on the land in good faith from Mrs. Slaughter after the purported sale to her by the substitute trustee acquired good title as against Qualls; but this is so not on the theory that the title actually passed, but rather on the theory that Qualls, by the execution of the deed of trust, made it possible for the trustee to create the appearance of good title in Mrs. Slaughter, and it would be inequitable to permit Qualls now to show otherwise as against those who have purchased in good faith in reliance thereon.

*Id.*

As the Moores point out, however, the Texas Supreme Court later recognized the portion of the opinion that "suggests that such purchasers merit protection under equitable estoppel principles" is dicta. *Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 169 (Tex. 2013). And more importantly, those equitable estoppel principles "could only bind the *maker* or beneficiary under the trust deed on the theory that, having authorized the recital, he would be estopped to disclaim its truth . . . ." *Bowman v. Oakley*, 212 S.W. 549, 552 (Tex. App.—Fort Worth 1919, writ ref'd) (emphasis added). The Moores were not the maker of the deed of trust and West

Bend has not established it entitlement to equitable grounds barring the Moores' assertion of their title based on the record before us.[15]

## IV. CONCLUSION

In summary, we find that there is a genuine issue of material fact as to whether West Bend had an interest in the property or whether the foreclosure violated the bankruptcy stay and is void. We affirm the trial court's denial of the Moores' motion for summary judgment and reverse the trial court's order granting West Bend's motion. We remand the case for proceedings not inconsistent with this opinion.

JEFF ALLEY, Chief Justice

December 27, 2024

Before Alley, C.J., Palafox, and Soto, JJ.

---

[15] We express no opinion on whether other equitable doctrines might serve as defenses to a title dispute that might have been asserted long ago. *See Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180, 196 (Tex. 2022) ("Although we take no position on whether laches or any other equitable doctrine can provide a valid defense to a notice-based collateral attack on a judgment transferring property, we note that our holding above regarding limitations does not necessarily resolve the issue."); *In re E.R.*, 385 S.W.3d 552, 569 (Tex. 2012) ("If, after learning that a judgment has terminated her rights, a parent unreasonably stands mute, and granting relief from the judgment would impair another party's substantial reliance interest, the trial court has discretion to deny relief."); *see also Thompson v. Landry*, No. 01-21-00294-CV, 2023 WL 4770126, at *12 (Tex. App. July 27, 2023, pet. granted) (discussing but not deciding whether laches applies to collateral attack of tax foreclosure judgment).